# EXHIBIT 3

**FEDERAL ENERGY REGULATORY COMMISSION**
Office of the Chairman

June 18, 2020

The Honorable Bobby Rush
Chairman
Committee on Energy and Commerce
Subcommittee on Energy
House of Representatives
Washington, DC 20515

Dear Chairman Rush:

    We received your June 1, 2020, letter requesting more information regarding the Federal Energy Regulatory Commission's (FERC) oversight of the Edenville Project operated by Boyce Hydro Power, L.L.C. (Boyce Hydro or licensee) in Michigan (formerly FERC hydropower Project No. 10808). Specifically, you posed the following questions, for which answers are provided below.

1. *Section 31 of the FPA gives FERC the authority to levy civil penalties on licensees for non-compliance with FERC orders and license requirements. Did the Commission levy civil penalties against Boyce Hydro for its repeated non-compliance? If so, what penalties did Boyce Hydro pay? If not, why not?*
   In 2008, Boyce Hydro indicated[1] that it did not have the funds needed to undertake construction to increase spillway capacity, the area of principal concern. Given this, staff did not believe that assessing penalties would be effective in bringing Boyce Hydro into compliance.

2. *The record indicates that FERC's dam safety engineers were aware of the deficiencies in the spillway capacity of the Edenville facility since at least 1999 when the facility was operated by a previous licensee. Was Boyce Hydro aware of the issues with the spillway and the need to repair the spillway when it acquired the license? At that time, did the Commission include limitations on reservoir level or capacity or other operational conditions in the license to minimize the risk of dam failure?*
   The Commission's Dam Safety Guidelines require projects to be designed to safely handle the Inflow Design Flood, which was the Probable Maximum Flood in Edenville's case. The dam must be able to safely pass the flows through spillways without overtopping the embankments. As described in the publicly available docket for this project, the Commission issued a letter in 1999 to the prior licensee of the project, Wolverine Power Corporation (Wolverine), describing the need to increase spillway capacity as it could only pass about 50 percent of the Probable Maximum Flood. The

---

[1] Boyce Hydro Power, L.L.C., Request for Extension of Time Re: Edenville, Docket No. 10808, at 2-3, nn. 4-11 (filed Nov. 26, 2008).

licenses for the Sanford, Edenville, Secord, and Smallwood Projects were transferred from Wolverine to Synex Michigan, LLC (Synex) in June 2004. Synex later changed its name to Boyce Hydro. In its application for transfer, Synex stated that it had requested from Wolverine, and would permanently retain, "all subject License instruments and all maps, plans, specifications, contracts, reports of engineers, accounts, books, records, and all other papers and documents relating to the original project." In addition, Synex stated that it would accept "all the terms and conditions of the subject License" and agreed to execute those requirements as if it were the original licensee. As Synex was responsible for performing its own due diligence review before acquiring the Edenville Project, it should have been aware of the spillway issue.

At the time that Synex acquired the license, the Commission had not imposed safety-related reservoir level limitations or other operational conditions. While pre-emptive drawdowns had been considered, staff assessments determined they would not increase the ability of the facility to pass the Probable Maximum Flood.

3. *Why was Boyce Hydro allowed to continue operating out of compliance for over 10 years before the Commission revoked its license?*

   Commission staff makes every effort to work with licensees to resolve compliance issues before resorting to more punitive measures, such as the issuance of a cease generation order, the assessment of civil penalties, or license revocation. As detailed in the 2017 compliance order, Commission staff made every effort to bring the Edenville Project into compliance, including advising on designs to incrementally increase the number and size of spillways to eventually reach the required capacity. During that time, Boyce Hydro consistently indicated it was working on plans to address the spillway capacity but never produced acceptable results. Boyce Hydro proposed, and Commission staff accepted, more than 10 different plans and schedules to build auxiliary spillways. However, after repeated deadlines missed by the licensee, as well as repeated extension requests, staff concluded that Boyce Hydro was not progressing in any meaningful way in addressing its compliance issues. As a result, the Commission issued a cease generation order in 2017 in an effort to convince Boyce Hydro to come into compliance. Unfortunately, that also did not result in progress, which prompted the Commission to initiate the revocation proceeding in 2018.

4. *Boyce Hydro made repeated assertions during its years of non-compliance that the cost for repairs and lack of financing was a major barrier to complying with FERC's directive to address the spillway capacity. Since the spillway issue was known at the time Boyce Hydro took over the license, did FERC assess Boyce Hydro's financial capacity to make those repairs prior to approving the license transfer? What were the estimated costs of bringing the project into compliance with dam safety standards? Does FERC have authority to assess the financial capacity of a licensee if significant repairs are needed to the project prior to licensing?*

   Under the Federal Power Act, the Commission can assess the financial capacities of a licensee for a new license, a re-license, or a license transfer. Boyce Hydro (Synex at the



time) had acquired the project assets from Wolverine through a foreclosure sale, which is an exception to the Act's otherwise-applicable requirement that the Commission pre-approve a transfer. Nothing in the record at the time of the transfer cast doubt on Boyce Hydro's ability to fulfill its regulatory and financial obligations. It was not until four years after the transfer that Boyce Hydro indicated that it did not have the finances to complete the plans it had put forth for addressing spillway capacity. In the end, Boyce Hydro never produced final designs for spillway alternatives and never provided formal estimates for the cost of this work.

5. *FERC's 2017 Compliance Order stated that: "the Commission's primary concern is Boyce Hydro's longstanding failure to address the project's inadequate spillway capacity, which must be remediated to protect life, limb, and property." When FERC made the decision to go forward with the Revocation Order, did FERC consult Michigan regarding the significant public safety concerns stemming from the longstanding non-compliance pattern by Boyce Hydro and the implications for the state?*

Yes. For a number of years, Commission staff worked with Michigan state authorities, who were aware of, and occasionally reported to the Commission, improper activities by Boyce Hydro. Following the issuance of the Commission's Order Proposing Revocation on February 15, 2018, staff contacted the Michigan Department of Environmental Quality to discuss that the result of the Commission's possible revocation of the license would remove the facility from federal jurisdiction.

6. *What, if any, involvement did Michigan have during the non-compliance proceeding? What, if any, involvement did Michigan have during the revocation proceeding? Did FERC determine what authorities Michigan has in order to compel necessary repairs to the facility under State law after revocation?*

Multiple Michigan agencies intervened or commented during the years of non-compliance or in the revocation proceeding for the Edenville Project. Their comments were generally focused on recreational and environmental impacts and potential transfer of the license to other parties.

As described in the 2018 Commission Order Revoking License, the state of Michigan has authority over non-federally regulated dams in the state. In both the order revoking license and on rehearing, the Commission noted that Michigan has extensive dam safety regulations, including enforcement mechanisms such as the ability to commence a civil action for appropriate relief for violations.

7. *Boyce Hydro continues to operate three other similar projects in the region — Sanford (P-2785), Secord (P-10810) and Smallwood (P-10809). These three FERC-licensed projects appear to present similar risks of dam failure. What actions is FERC taking to lower the risk that these facilities also fail? Is Boyce Hydro in compliance with all license conditions and dam safety standards with respect to these three facilities? Has FERC started non-compliance proceedings for any of these facilities?*

The Sanford Dam is now breached and is no longer impounding a reservoir. The

Commission has required Boyce to undertake removal of the debris located at the Sanford spillway structure to avoid creating downstream hazards or the impounding of river flows. Any activity to reconstruct the facility will require approval by the Commission. In addition, we have required Boyce Hydro to assess and address any areas of river erosion or slope instability along the Sanford Reservoir reach of the Tittabawassee River that may pose a risk to structures. FERC has ordered reservoir level drawdowns at both the Secord and Smallwood projects in order to allow a full assessment of each project's condition. The design of the Smallwood Project indicates that it would be able to pass 100 percent of the Probable Maximum Flood. However, like Edenville, the spillway for the Secord Project is not able to pass 100 percent of the Probable Maximum Flood. Boyce Hydro has a plan and schedule in place to meet that capacity by December 31, 2022. Regarding other license requirements at Secord and Smallwood, Boyce Hydro was notified in 2010, 2014, and 2018 regarding the need to either amend its recreation plan or modify recreational installed facilities to meet the approved plan. Boyce Hydro has stated that an application to amend those recreation plans will be filed. A progress report on these potential amendments was due to the Commission on May 26, 2020, but Boyce Hydro has yet to submit that information.

8. *Since the Edenville facility is no longer under FERC jurisdiction, will the Commission have any role in a post-event examination of this incident of dam failure?*

   As the facility is no longer in the Commission's jurisdiction, the Commission has no authority to require or direct an investigation involving the Edenville facility. However, the state of Michigan has invited Commission staff to participate in its investigation. In addition, both the Commission and the state of Michigan have required Boyce Hydro to establish a single Independent Forensic Team to review each of the four Boyce projects. Five members of the Independent Forensic Team have been approved as of June 9, 2020.

9. *In May 2020, the State of Michigan sued Boyce Hydro for alleged counts of environmental violations, public nuisance, and conversion, based upon Boyce Hydro's lowering of Lake Wixom's water level. Did Michigan consult with FERC with regard to this lawsuit? Will FERC investigate whether the reservoir water level caused or contributed to the breach of Edenville Dam?*

   Staff is not aware of any communications from the state of Michigan with regard to the May 2020 lawsuit. As stated above, Michigan has invited Commission staff to participate in the state's investigation of Edenville.

10. *Does FERC have any recommendations to improve the safety of dams, such as Edenville, that have had their Federal license revoked and that are under the primary jurisdiction of a State agency? Does FERC have any recommendations to improve federal law with respect to the safety of dams under its control or those being transferred from federal to state control?*

    The Commission will continue to work with the State of Michigan and the Forensic team that is investigating Edenville along with the FERC-jurisdictional facilities of Secord,



Smallville, and Stanford. The results of this inquiry can help inform any recommendations we may have going forward. We appreciate the Committee's interest in this issue, and we are looking forward to working with you to find potential ways to improve federal law.

If I can be of any further assistance with this or any other Commission matter, please let me know.

Sincerely,

Neil Chatterjee
Chairman

Document Content(s)

Outgoing letter Chairman Rush.PDF....................................1-5