# EXHIBIT 4

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

Boyce Hydro Power, LLC ) Project No. 10808-058

EMERGENCY MOTION FOR STAY

Pursuant to Rule 212 of the Rules of Practice and Procedure of the Federal Energy Regulatory Commission ("Commission" or "FERC"),[1] Boyce Hydro Power, LLC ("BHPLLC") respectfully requests this emergency motion for a stay of the September 10, 2018 Order Revoking License ("License Revocation Order")[2] for the Edenville Project No. 10808 ("Project") pending Commission action on rehearing of the License Revocation Order[3] and judicial review. The License Revocation Order revokes the Project license, effective 15 days from issuance (September 25, 2018), and requires BHPLLC by that date to cease generation and document that it has permanently disabled the Project's electric generating equipment.

As detailed below, the order, if not stayed, will cause irreparable financial and other hardship to BHPLLC. No other entity will be harmed by issuance of a stay. Finally, a stay will serve the public interest because it will enable local Lake Associations, whose members live along the shoreline, additional time to evaluate whether to acquire and operate the Project in the context of a license transfer which, if accomplished, will benefit all parties. Revocation of the license would severely diminish the possibility that another entity will ever be able and willing to acquire and properly

---

[1] 18 C.F.R. § 385.212 (2018). Rule 212 states that a motion may be filed at any time in any proceeding unless otherwise provided.

[2] *Boyce Hydro Power, LLC*, 164 FERC ¶ 61,178 (2018).

[3] BHPLLC intends to file a request for rehearing of the License Revocation Order by the statutory deadline of October 10, 2018.

maintain the dam. A stay will also preserve the public recreation benefits provided by the Project.[4]

## I. BACKGROUND

### A. Order to Cease Generation

There is no need to go into detail here regarding the Commission's November 20, 2017 Order to Cease Generation[5] at the Project, as the relevant facts are covered in BHPLLC's December 1, 2017 emergency motion for stay of that order,[6] in BHPLLC's February 2, 2018 request for rehearing of that order,[7] and in the Commission's February 15, 2018 order denying rehearing of the Cease Generation Order.[8] On February 7, 2018, the U.S. Court of Appeals for the D.C. Circuit ("D.C. Circuit") granted a stay of the Cease Generation Order until further order of the Court.[9]

On April 11, 2018, BHPLLC filed a petition for review of the Commission's Cease Generation Orders with the D.C. Circuit.[10] On May 8, 2018, the Court granted BHPLLC's unopposed motion to hold the case in abeyance pending FERC's decision on revoking the license.

---

[4] BHPLLC is also filing this day with the U.S. Court of Appeals for the D.C. Circuit an emergency request for stay of the License Revocation Order, since the Commission elected to make the order effective before the expiration of the 30-day period to which BHPLLC is entitled to file a request for rehearing under the Federal Power Act ("FPA"). 16 U.S.C. § 825*l*(a) (2012).

[5] *Boyce Hydro Power, LLC*, 161 FERC ¶ 62,119 (2017).

[6] Emergency Motion for Stay Pending Rehearing, Request for Approval of Plan to Fund the Tobacco Auxiliary Spillway, and Request for Extensions of Time, Project No. 10808-057 (filed Dec. 1, 2017) ("First Emergency Motion").

[7] Request for Rehearing of Boyce Hydro Power, LLC, Project No. 10808-057 (filed Feb. 2, 2018).

[8] *Boyce Hydro Power, LLC*, 162 FERC ¶ 61,116 (2018).

[9] Order, *In re Boyce Hydro Power, LLC*, No. 17-1270 (D.C. Cir. Feb. 7, 2018) (per curiam).

[10] *Boyce Hydro Power, LLC v. FERC*, No. 18-1097 (D.C. Cir. filed Apr. 11, 2018).

B.  **License Revocation**

On February 15, 2018 the Commission issued an Order Proposing Revocation of the license pursuant to section 31(a) of the FPA.[11] The order concluded that there was no reason to believe that BHPLLC intended to come into compliance with the license, and therefore, proposed revoking the license.[12]

On March 16, 2018, BHPLLC filed a motion[13] seeking withdrawal of the Order Proposing Revocation ("Motion for Withdrawal"), stating several reasons why license revocation would not be in the public interest.

On April 20, 2018, the Commission requested additional information in connection with the Motion for Withdrawal.[14] On May 18 and May 29, 2018, BHPLLC responded to the additional information request.[15]

In April 2018, three lakeshore property owners associations ("Lake Associations"), concerned about the effects of license revocation on their members, requested that the Commission delay its decision on license revocation until November 1, 2018, citing their efforts to investigate, in partnership with county governments and other stakeholders, transitioning the Project to a public or non-profit corporation, with the

---

[11] *Boyce Hydro Power, LLC*, 162 FERC ¶ 61,115 (2018).

[12] *Id.* at P 10.

[13] Motion of Boyce Hydro Power, LLC for Withdrawal of Order Proposing Revocation of License, Project No. 10808-000 (filed Mar. 16, 2018).

[14] Letter to Lee Mueller, BHPLLC, and Michael Swiger and John Clements, Van Ness Feldman, LLP, from CarLisa Linton, Acting Director, Division of Hydropower Administration and Compliance, Project No. 10808-058 (issued Apr. 20, 2018).

[15] Letter from Lee W. Mueller, Co-Member Manager, BHPLLC, to Kimberly Bose, FERC Secretary, Project No. 10808-058 (filed May 18, 2018); Letter from Lee W. Mueller, Co-Member Manager, BHPLLC, to Kimberly Bose, FERC Secretary, Project No. 10808-058 (filed May 29, 2018).

option to retain the existing FERC license.[16] The Attorney General of Michigan,[17] a member of the Midland County Board of Commissioners,[18] and the Gladwin County Board of Commissioners[19] filed letters supporting the Lake Associations' request.

On July 30, 2018, the Lake Associations filed a progress report ("Progress Report") with the Commission and requested that it continue to withhold action on license revocation.[20] On September 10, 2018, the Commission issued the License Revocation Order.

## II. ARGUMENT

In acting on stay requests, the Commission applies the standard set forth in the Administrative Procedure Act,[21] i.e., the stay will be granted if "justice so requires."[22] Under this standard, the Commission considers a number of factors, such as: (1) whether the movant will suffer irreparable injury in the absence of a stay, (2) whether the issuance of a stay would substantially harm other parties, and (3) where the public interest lies.[23] BHPLLC submits that the standard for a stay has been met in this case.

---

[16] Letter from Sanford Lake Preservation Association, Wixom Lake Association, and Sanford Lake Association, to Kimberly D. Bose, FERC Secretary, Project No. 10808-058 (filed Apr. 12, 2018).

[17] Letter from Bill Schuette, Attorney General, State of Michigan, to Kimberly D. Bose, FERC Secretary, Project No. 10808-000 (filed Apr. 30, 2018).

[18] Letter from Jeanette Snyder, Midland County Commissioner, to Kimberly D. Bose, FERC Secretary, Project No. 10808-000 (filed May 2, 2018).

[19] Letter from Terry L. Walters, Chair, Gladwin County Board of Commissioners, to Kimberly D. Bose, FERC Secretary, Project No. 10808-058 (filed Apr. 12, 2018).

[20] Lake Associations' Progress Report No. 1 on Efforts in Response to the Proposed Revocation of License, Project No. 10808-000 (filed July 30, 2018).

[21] 5 U.S.C. § 705 (2012).

[22] *Boott Hydropower, Inc.*, 144 FERC ¶ 61,211 at P 9 (2013), *aff'd on other grounds, U.S. Dept. of the Interior v. FERC*, 876 F.3d 360 (1st Cir. 2015); *Grand Coulee Project Hydroelectric Auth.*, 136 FERC ¶ 61,178 at P 9 (2011) (citing *Duke Energy Carolinas, LLC*, 124 FERC ¶ 61,254 at P 8 (2008)); *L.S. Starrett Co.*, 132 FERC ¶ 61,036 at P 8 (2010) (same); *Aquenergy Sys., Inc.*, 39 FERC ¶ 61,373 at p. 62,211 (1987).

[23] *Boott Hydropower, Inc.*, 144 FERC ¶ 61,211 at P 9 (citing *Aquenergy Systems, Inc.*, 39 FERC ¶ 61,373 at p. 62,211 (citing *Columbia Gulf Transmission Co.*, 37 FERC ¶ 61,003 (1986))).

A. **BHPLLC Faces Irreparable Harm Absent a Stay.**

There is no question that BHPLLC will face irreparable harm in the absence of a stay of the License Revocation Order. Following license revocation, BHPLLC would have to operate and maintain the Project dam, but without any offsetting revenues from power generation. Such a scenario constitutes immediate and irreparable harm to BHPLLC. The licensee should not be forced to incur irreparable financial harm while the matter remains before the Commission and, if necessary, the Court of Appeals.

First, economic harm is "irreparable" when it amounts to an uncompensated loss.[24] The Project's gross annual revenues of approximately $1.1 million are more than 50 percent of BHPLLC's gross revenues from all four of its hydroelectric projects.[25] If the license is revoked, this revenue will never be recovered.

While monetary losses, without more, are not generally sufficient to justify a stay, here there is much more.[26] As shown in the Affidavit of Lee W. Mueller, with gross revenues cut in half, BHPLLC will not have sufficient revenues from the remaining three small projects to make any improvements to the Edenville dam.[27] The longer the situation persists, the more the Edenville dam will deteriorate.

BHPLLC and public safety will begin to experience adverse impacts from license revocation not just over the long-term, but in the short-term as well. Attached to this

---

[24] *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 & n.2 (D.C. Cir. 1977); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674, *aff'd in part, remanded in part*, 770 F.2d 1144 (D.C. Cir. 1985).

[25] First Emergency Motion at 6; *id.*, Att. A, Affidavit of Lee W. Mueller ("Mueller Aff."), Ex. 1.

[26] *City of Tacoma*, 87 FERC ¶ 61,197 at pp. 61,733-35 (stay granted where licensee stated that high costs of implementing challenged license conditions would cause it to begin project decommissioning absent a stay), *reh'g denied*, 89 FERC ¶ 61,273 (1999), *remanded by City of Tacoma v. FERC*, No. 99-1192, 2000 WL 1683468 (D.C. Cir. 2000) (per curiam), *on remand*, 102 FERC ¶ 61,029 (2003).

[27] Mueller Aff. ¶ 10.

motion is an affidavit[28] from Mr. Richard D. Purkeypile, P.E., a registered professional engineer and dam safety engineering consultant with decades of experience who is approved by FERC to be the independent consultant responsible for safety inspections for the Project required by the Commission's dam and project safety regulations.[29] As shown in Mr. Purkeypile's affidavit, there is significant deterioration of the concrete spillway rollways. Flows over the spillways are currently periodic, principally during periods of high water in the spring and early summer. License revocation will convert seasonal, periodic spill to continuous year round spill because BHPLLC will not be able to run any flows through the power house. Mr. Purkeypile states that this will cause continual additional damage, particularly during winter freeze conditions.[30] In addition, each spillway has three gates. In order to repair each spillway, it will be necessary to install a cofferdam for a period of four to six months, during which time the total spillway of capacity of the Project will be diminished by approximately 50 percent. If the turbines are permanently disabled during that period they will not be available to pass any flood flows, increasing the potential for overtopping of the dam.

BHPLLC will also be irreparably harmed because it will be unable to sell the Project as a licensed, revenue generating asset to a successor licensee and apply to the Commission to transfer the license to the successor. The Commission's cavalier statement that the Lake Associations (and, presumably, any other potential license transferee) will be free post revocation to continue exploring the possibility of assuming

---

[28] Affidavit of Richard Dee Purkeypile, P.E. (attached hereto as Attachment A) ("Purkeypile Aff.").
[29] 18 C.F.R. §§ 12.30-12.39.
[30] Purkeypile Aff. ¶ 3.

responsibility for the Project dam by obtaining a Commission license is, as the Commission is well aware, completely unrealistic. Without a revenue stream from the Project, and facing the multi-year, arduous, very expensive, and highly uncertain license application process, the incentive for the Lake Associations to continue their efforts will completely evaporate. The same disincentive will apply to any other potential acquirer of the Project. The value of the dam and mothballed generation facilities will plummet. In such circumstances, where "there would be no way to return . . . entities to their status quo ante," the Commission has held that this type of irreparable harm warrants a stay.[31]

Finally, although a successful result in BHPLLC's request for rehearing of the License Revocation Order will restore the lost revenue going forward, BHPLLC will be forced to lay off a substantial portion of its work force and incur maintenance costs that it would not incur if the Project was generating.[32] In sum, BHPLLC clearly faces an immediate financial crisis caused by the License Revocation Order.

All of these injuries are "both certain and great" and "actual and not theoretical."[33] As such, BHPLLC most certainly will experience the type of permanent, irreparable harm that justifies a stay.

### B. A Stay Will Not Harm Other Parties.

Granting BHPLLC's request for stay would not impose any "serious adverse effect on other interested persons."[34] The Commission's greatest concern, inadequate capacity for the spillways to allow safe passage of the Probable Maximum Flood, is

---

[31] *Cal. Indep. Sys. Operator Corp.*, 114 FERC ¶ 61,339 at PP 20-22 (2006).

[32] Request for Rehearing of Boyce Hydro Power, LLC at 11-12, Project No. 10808-056 (filed Dec. 20, 2017); *see also id.*, Att. A, Supplemental Affidavit of Lee W. Mueller.

[33] *Wisconsin Gas*, 758 F.2d at 674.

[34] *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958).

extremely unlikely to be an issue in the forseeable future. That is because the most recent report by the Special Board of Consultants required by the Commission for the Project concluded that the probability of a maximum flood with an apparent recurrence interval ranging from 500,000 to 1,000,000 years occurring within the next five to 10 years at Edenville ranges from 5-10 in one million.[35]

Indeed, a stay will reduce the likelihood of any harm to others by maintaining a sufficient revenue stream to allow BHPLLC to continue working toward meeting the Commission's dam safety standards.[36]

Finally, the same danger to human safety from operating the spillway during winter icing conditions that would result from inability to run the turbines which caused the Commission to temporarily stay the Cease Generation Order will soon recur. If the license is revoked, BHPLLC will be forced to put Project operators' safety at risk once again.

C. **Granting a Stay Is in the Public Interest.**

"The public interest is a uniquely important consideration in evaluating a request for [interim relief]," which in this case would be met by a stay.[37] A stay would continue the flow of generating revenues necessary to comply with the Project license, in particular the dam safety requirements, until BHPLLC, or a successor licensee, is able to establish a sensible path toward achieving compliance with the license. It would also enable BHPLLC to keep open the public recreation facilities, maintain the reservoir level

---

[35] First Emergency Motion at 2 n.6.

[36] The License Revocation Order finds that BHPLLC's efforts in this regard have been insufficient, but BHPLLC will contest that finding in its request for rehearing of the License Revocation Order.

[37] *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C. Cir. 1980).

regime on which thousands of lakeshore property owners and recreationists depend, as well as allow sufficient time for the Lake Associations and local governments to evaluate acquisition of an operating licensed project. In sum, the License Revocation Order, if not stayed—and ultimately not reversed on rehearing—will make it extremely difficult, if not impossible, to find an entity that will be able and willing to acquire the dam and take the actions necessary to ensure that it will be able to safely pass flood flows. Such an outcome could not possibly be in the public interest.

### III. CONCLUSION

For the foregoing reasons, BHPLLC moves the Commission to stay the effectiveness of the License Revocation Order pending final action on the request for rehearing that BHPLLC will timely submit.

Respectfully submitted,

*Michael A. Swiger*

Michael Swiger
John Clements
Sharon White
Van Ness Feldman, LLP
1050 Thomas Jefferson Street, NW
Seventh Floor
Washington, DC 20007
202-298-1800
mas@vnf.com
jhc@vnf.com
slw@vnf.com

Attorneys for Boyce Hydro Power, LLC

September 17, 2018

# ATTACHMENT A

# Affidavit of Richard Dee Purkeypile, P.E.

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

Boyce Hydro Power, LLC ) Project No. P-10808

### AFFIDAVIT OF RICHARD DEE PURKEYPILE, P.E.

1) My name is Richard Dee Purkeypile, P.E with Purkeypile Consulting, LLC. I am a Licensed Professional Engineer registered in the State of Michigan. (License No. 6201063059). My area of practice is civil engineering with a focus on dam safety engineering. I have 33 years of experience specifically in Dam Safety Engineering. I spent 15 years with the Texas Dam Safety Program and have been a private consultant for 18 years. My entire career has been devoted to analyzing and evaluating dams as well as designing new dams and rehabilitating existing dams and spillway structures. I am currently providing dam safety engineering consultation services to Boyce Hydro Power, LLC (BHPLLC), the licensee for the Edenville Project No. 10808 (Edenville Project). My business address is 229 North Main Street, Eureka Springs, AR 72632. As an Independent Consultant, I have performed FERC Part 12-D inspections of all four BHPLLC hydroelectric projects which include the Edenville Project as well as the Secord Project No. 10809, the Smallwood Project No. 10810, and the Sanford Project No. 2785. I have also performed engineering studies regarding the projects and provided structural design consultation services for improvement projects for the dams. I am currently acting as the Dam Safety Engineer for BHPLLC:

2) On September 10, 2018, the Federal Energy Regulatory Commission (FERC) issued an "Order

2

Revoking License" (Order) which states that the Edenville Project license is revoked and BHPLLC must permanently disable the project's generating equipment within 15 days.

3) As the Independent Consultant and acting dam safety engineer for the BHPLLC projects, it is my opinion that revoking the license for the Edenville Project will have the following negative dam safety impacts:

a) Normal river flows are typically discharged through the two hydroelectric turbines for the project. The first Part 12-D inspection I performed for BHPLLC was for the Edenville Project in May 2015. The inspection revealed that the concrete deterioration of the spillway rollways is significant (a rollway is the curved surface of the floor of the spillway discharge chute for each radial gate, see Photo No.1 below).



Photo No.1

In the absence of the ability to discharge water through the turbines, the spillways will be the only method for controlled releases of water from the reservoir. Constant flows over the spillway rollways will cause continual additional damage to the existing concrete, especially during the winter months when freezing conditions will be expected to accelerate

3

the damage to the concrete rollways.

b) The spillways at the Edenville Project consist of two sets of three radial gates. One set of three gates is located on the Tittabawassee River side of the project. The other set of three gates is located on the Tobacco River side of the project. Each gate rests on the top of a concrete rollway which discharges flows down to the stilling basin below the gates. There are two exterior side walls for each set of three gates. Two interior piers (concrete walls) separate the individual gates and also provide anchorage for the radial gate trunnions. Trunnions are the pivot point mechanism for each radial gate which allow the gates to be raised to discharge flows (see Photo No.1, above). Repairs to the spillway rollway concrete, the damaged piers and other damaged concrete components of the spillway will require construction of a cofferdam at each of the two sets of spillway gates so work can be done in the dry. Each cofferdam will be in place for approximately four to six months and will necessarily block off approximately 50 percent of the total discharge capacity for the Edenville Project. If the turbines are permanently disabled, their ability to pass 2,000 cubic feet of water per second (cfs) will not be available, increasing the potential for overtopping of the dam.

4) Paragraphs 43, 44 and 45 in the FERC order assert that BHPLLC has not made any progress to address the hydraulic adequacy of the dam. It should be noted that BHPLLC asked Purkeypile Consulting to review a plan set for the Edenville radial gates. The plan set was dated January 2013 and was, in my opinion, at approximately 75% completion with several details yet to be completed. The complex plan set called for modifying the existing gate structures to allow for the installation of larger gates. The review of the plan set began July 8, 2018 and continued through August 22, 2018. The review initially was considered to be a peer review of the plans with recommendations to provide additional structural detailing. However,

4

as the review progressed, it became apparent that a more detailed review of the original construction documents were necessary to better understand the foundation on which the proposed modifications would be attached. Purkeypile Consulting reviewed all the existing original construction plans sheets as developed by Holland, Ackerman & Holland in 1923, as had been provided to Purkeypile Consulting in the initial 2015 Part 12-D inspection of the Edenville Project. After detailed structural analysis of the existing structure using the original plan sheets and historical data on materials properties (in particular, the tensile strength of common reinforcement steel in the 1925 era); it was determined that certain elements of the existing gate structure would not be expected to remain stable under maximum loading conditions if the gate structure was modified as proposed. Maximum loading conditions would be those loading conditions imposed on all the dam facilities by the Probable Maximum Flood (PMF) event. The PMF event is the flood magnitude that may be expected to occur from the most critical combination of meteorological and hydrologic conditions that are reasonably possible for a given watershed. During a design review work session performed on August 20, 2018, BHPLLC asked if Purkeypile Consulting could design an alternative spillway that would be capable of passing approximately 24,000 cfs for the Edenville power house side of the project. The design team agreed that a labyrinth weir would provide that capacity and that a second labyrinth weir could be constructed on the Tobacco River side of the dam. The two labyrinth weirs would be designed to provide the additional spillway discharge capacity to allow the Edenville Project to safely pass the 100% PMF, which is the required Inflow Design Flood for the Edenville Project. Purkeypile Consulting used calculations developed from research performed at Utah State University's Utah Water Research Laboratory to design a 400-foot wide labyrinth weir located on the Edenville (Tittabawassee River) side of the dam. Prior to the receipt of the "Order Revoking License", Purkeypile Consulting was to be tasked

with creating an engineering design report, which has now been postponed until the disposition of this order has been determined. Additionally, preliminary plans and specifications were being developed which were to have been provided to the FERC for review and comment along with the engineering design report. It is my professional opinion that the proposed labyrinth weirs would provide sufficient discharge capacity to safely pass the 100% PMF flood event with approximately one-foot of freeboard.

5) In conjunction with the construction of the labyrinth weirs, BHPLLC and Purkeypile Consulting agreed that repairing the existing spillways would also be necessary to allow the Edenville Project to safely pass the 100% PMF. The proposed rehabilitation of the deteriorated concrete rollways for each radial gate would consist of overlaying a reinforced concrete slab on the existing rollway. The new slab would be approximately 6 to 8-inches thick and would be anchored with steel rebar dowels into the rollway, piers and side walls. A similar repair was undertaken for the Secord project. The Secord overlay has performed well and has helped to ensure that the Secord spillways can operate safely. The overlay would address the main issue with concrete deterioration for both sets of gated spillways for the Edenville Project. Additional concrete repairs would also be undertaken such as; repair of deteriorated piers and side wall repair or replacement on the Tobacco River side of the dam.

6) To conclude, revoking the Edenville Project license will: (1) accelerate existing damage to the spillway concrete by requiring all flows to be released over the spillways at all times; (2) increase the danger of flood flows overtopping the dam by eliminating the turbines as a means of passing those flows through the Project; and (3) impair BHPLLC's efforts to finish the design reports and plans for additional spillway capacity which will allow the Edenville Project to safely pass flood flows.

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

Boyce Hydro Power, LLC            )            Project No. 10808

### AFFIDAVIT OF RICHARD DEE PURKEYPILE, P.E.

Richard Dee Purkeypile, being duly sworn, deposes and states that the attached are his sworn affidavit and exhibits and that the statements contained therein are true and correct to the best of his knowledge, information, and belief;

Richard Dee Purkeypile

9-17-2018
Date

State of Arkansas
County of Carroll

Subscribed and sworn to (or affirmed) before me on this 17 day of September, 2018, by:

Richard Dee Purkeypile

Proved to me on the basis of satisfactory Evidence to be the person who appeared before me.

Signature: Michelle Klimek

Notary Public, State of: Arkansas

MICHELLE KLIMEK
MY COMMISSION # 12378683
EXPIRES: October 1, 2020
Carroll County

## CERTIFICATE OF SERVICE

Pursuant to Rule 2010 of the Rules of Practice and Procedure of the Federal Energy Regulatory Commission, I hereby certify that I have this day caused the foregoing document to be served upon each person designated on the official service list compiled by the Secretary in this proceeding.

Dated at Washington, D.C., this 17th day of September, 2018.

/s/ *Mealear Tauch*
Mealear Tauch
Van Ness Feldman, LLP
1050 Thomas Jefferson Street, NW
Seventh Floor
Washington, DC 20007-3877

Document Content(s)

2018-09-17 BHPLLC FERC Motion.PDF...........................................1-17