# EXHIBIT 6

164 FERC ¶ 61,178
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Kevin J. McIntyre, Chairman;
                       Cheryl A. LaFleur, Neil Chatterjee,
                       and Richard Glick.

Boyce Hydro Power, LLC                          Project No. 10808-058

ORDER REVOKING LICENSE

(Issued September 10, 2018)

1.      This order revokes the license for the 4.8-megawatt (MW) Edenville Project
No. 10808 (Edenville Project) pursuant to section 31(b) of the Federal Power Act
(FPA).[1]  As discussed below, we take this action because of Boyce Hydro Power, LLC's
(Boyce Hydro or licensee) longstanding failure to increase the project's spillway
capacity to safely pass flood flows, as well as its failure to comply with its license, the
Commission's regulations, and a June 15, 2017 Compliance Order issued pursuant to
FPA section 31(a).[2]

I.      **Background**

2.      On October 16, 1998, the Commission issued a license for the Edenville Project,
located in Gladwin and Midland Counties, Michigan.[3]  The Edenville Project consists of
earthen embankments, known as the Edenville dam, totaling about 6,600 feet in length
and having a maximum height of 54.5 feet.  The project spans both the Tittabawassee and
Tobacco Rivers, creating a 2,600-acre reservoir known as Wixom Lake, with a gross
storage capacity of about 40,000 acre-feet and a 49-mile-long shoreline at full pool.
There is a 50-foot-long intake leading to the powerhouse located at the dam on the
eastern side of the project.  The powerhouse contains two 2.4-MW Francis-type turbine
generator units for a total installed capacity of 4.8 MW.  The project also includes
two reinforced concrete multiple-arch spillways.  The 69-foot-wide, 39-foot-

---

[1] 16 U.S.C. § 823b(b) (2012).

[2] *Boyce Hydro Power, LLC*, 159 FERC ¶ 62,292 (2017) (2017 Compliance Order).

[3] *Wolverine Power Corporation*, 85 FERC ¶ 61,063 (1998).

Project No. 10808-058                                                           - 2 -

highTittabawassee spillway (also referred to as the Edenville spillway) is located on the eastern side of the project and contains three Tainter gates and two low-level sluice gates.  The Tobacco spillway is about 72 feet long and 72 feet wide with a crest height of about 40 feet, and contains three Tainter gates located on the western side of the project.  The project creates a 0.4-mile-long bypassed reach on the Tobacco River that extends from the dam to the point where the Tobacco River meets the Tittabawassee River.  The license includes terms and conditions concerning dam safety, property rights, water quality, public recreation and safety, and other project purposes.

### A.    __Failure to Increase the Project's Spillway Capacity__

3.      A detailed history of the events that have led us to this order can be found in the 2017 Compliance Order and in other Commission orders that are contained in this docket.  In summary, Commission staff has attempted to ensure the licensee corrected noncompliance issues at this project since Boyce Hydro's acquisition of the license in 2004 – a period of over 14 years.  Of particular concern is the project's inability to pass the Probable Maximum Flood (PMF)[4] due to inadequate spillway capacity.  The Commission's Dam Safety Guidelines require the project works to be designed to safely handle a flood up to the PMF either by withstanding overtopping of the loading condition during such a flood or alleviating the risk such that dam failure would no longer constitute a hazard to downstream life or property.[5]  In the alternative, the capacity of the spillway[6] must be adequate to prevent the reservoir from rising to an elevation that would endanger the safety of the project works.[7]  Currently, spillway capacity at the Edenville Project can only pass about 50 percent of the PMF.

---

[4] The "PMF event" is the flood that may be expected from the most severe combination of critical meteorologic and hydrologic conditions that is reasonably possible in the drainage basin under study.

[5] *See* Federal Energy Regulatory Commission, Engineering Guidelines for the Evaluation of Hydropower Projects, Chapter 2:  Selecting and Accommodating Inflow Design Floods for Dams at 2-3 (August 2015), http://www.ferc.gov/industries/hydropower/safety/guidelines/eng-guide/chap2.pdf.

[6] The spillway capacity is the maximum outflow flood which a dam can safely pass.

[7] *See* Federal Energy Regulatory Commission, Engineering Guidelines for the Evaluation of Hydropower Projects, Chapter 2:  Selecting and Accommodating Inflow Design Floods for Dams at 2-3 (August 2015), http://www.ferc.gov/industries/hydropower/safety/guidelines/eng-guide/chap2.pdf.

Project No. 10808-058                                                                                      - 3 -

4.     On January 4, 1999, the Commission's Office of Energy Projects, Division of Dam Safety and Inspections, Chicago Regional Engineer (Regional Engineer) issued a letter to the prior licensee of the project, Wolverine Power Corporation (Wolverine), describing the project's need to increase spillway capacity as the Commission's primary concern.[8] Wolverine failed to immediately address this concern, requesting instead that it be given additional time to study the spillway capacity issue.[9] On June 13, 2002, the Regional Engineer issued a letter requiring Wolverine to file, by July 31, 2002, a detailed plan and schedule for the completion of the spillway upgrades, and complete the modifications to address the inadequate spillway capacity by December 31, 2006.[10]

5.     The project license was transferred to Boyce Hydro on June 23, 2004.[11] On July 15, 2004, Boyce Hydro sent a letter to the Regional Engineer stating that it planned to complete construction of an auxiliary spillway on the Tittabawassee River in 2004 and was studying whether it also needed to construct a second auxiliary spillway on the Tobacco River.[12] The Regional Engineer generally accepted Boyce Hydro's proposal, requiring the licensee to file detailed plans and a schedule for the two auxiliary spillways by October 22, 2004, and to start construction on the Tittabawassee (or Edenville)

---

[8] January 4, 1999 Letter from the Regional Engineer at 1 (Accession No. 19990129-0235).

[9] March 23, 2000 Letter from Frank O. Christie at 1-2 (Accession No. 20000623-0163).

[10] June 13, 2002 Letter from the Regional Engineer at 3 (Accession No. 20030701-0140).

[11] *See Wolverine Power Corporation and Synex Michigan, LLC,* 107 FERC ¶ 62,266 (2004).  The license was transferred to a corporate entity named "Synex Michigan, LLC," which later changed its name to "Boyce Hydro Power, LLC."  *See* Notice of Change in Licensee's Name filed July 12, 2007 (Accession No. 20070717-0204).  We refer to Synex Michigan, LLC as "Boyce Hydro" in this Order.  When a license is transferred, the transferee steps into the shoes of the transferor, and becomes responsible for license compliance, including any outstanding issues. *See, e.g., Flambeau Hydro, LLC*, 113 FERC ¶ 61,236, at P 23 (2005).

[12] September 23, 2004 Letter from the Regional Engineer at 1-2 (Accession No. 20041005-0132).

Project No. 10808-058                                                              - 4 -

spillway by September 2005, and start construction on the Tobacco spillway by
September 2006.[13]

6.      At a November 10, 2004 meeting with Commission staff, Boyce Hydro explained
that it was in the process of reviewing and conducting a new PMF study.[14]  In light of
this, on November 22, 2004, the Regional Engineer sent a letter requiring Boyce Hydro
to complete that study and submit a plan and schedule for the design and construction
of the Tittabawassee (or Edenville) auxiliary spillway by December 23, 2004.[15]  On
December 13, 2004, the Regional Engineer sent a letter to Boyce Hydro reminding the
licensee of the December 23, 2004 deadline,[16] but two days before the PMF study was
due, Boyce Hydro requested another extension, until January 31, 2005, which the
Regional Engineer subsequently granted.[17]

7.      After Boyce Hydro missed the extended deadline, on February 24, 2005, the
Regional Engineer issued a letter finding Boyce Hydro in violation of a directive issued
pursuant to section 12.4(b)(2)(v) of the Commission's regulations and requiring Boyce
Hydro to submit the PMF study no later than March 31, 2005.[18]  This letter also provided
notice under section 31(a) that Boyce Hydro's ongoing violations could give rise to the
imposition of civil penalties or license revocation.

8.      On August 24, 2005, Boyce Hydro requested a joint technical review of design
options for increasing spillway capacity.[19]  In response, the Director of the Commission's
Division of Dam Safety and Inspections (D2SI) directed Boyce Hydro to convene a

---

[13] *Id.*

[14] November 22, 2004 Letter from the Regional Engineer at 1 (Accession
No. 20041130-0081).

[15] *Id.*

[16] December 13, 2004 Letter from the Regional Engineer (Accession
No. 20041221-0266).

[17] December 27, 2004 Order Granting Extension of Time (Accession
No. 20050104-0152).

[18] February 24, 2005 Letter from the Regional Engineer at 1 (Accession
No. 20050303-0197) (noting that the licensee had already received an extension of time).

[19] August 24, 2005 Letter from Peter Gates, P.E. at 2 (Accession No. 20040907-
0193).

Project No. 10808-058                                                        - 5 -

Board of Consultants[20] to oversee that evaluation as well as the design and construction of the auxiliary spillways.[21]  On August 7, 2006, the Regional Engineer issued a letter requiring Boyce Hydro to provide an updated plan and schedule to address the inadequate spillway capacity.[22]

9.     Over a year later, on November 8, 2007, Boyce Hydro sent a letter proposing a new schedule for design and construction of the spillway capacity upgrades and requesting that the deadline for completion of construction be extended to December 15, 2008.[23]  The Regional Engineer approved that new schedule and granted the requested extension the next week.[24]  On October 31, 2008, Boyce Hydro submitted conceptual design drawings, but the Regional Engineer rejected those designs as "patently deficient."[25]  The Regional Engineer directed Boyce Hydro to submit a new plan and schedule within 30-days and further directed that the schedule plan for construction be complete no later than October 31, 2009.[26]

10.    On November 26, 2008, Boyce Hydro requested an additional extension, claiming that the company would not be able to complete the work even with the extension to October 31, 2009, because it did not have the money on hand to complete construction

---

[20] A Board of Consultants is a group of independent professional engineers hired by the licensee to oversee, review, and assess, in this case, the planning, design, and construction of the proposed two auxiliary spillways.

[21] September 7, 2005 Letter from the Director of D2SI (Accession No. 20050909-0180).  Meetings with the licensee, Commission staff, and a Board of Consultants to review and discuss plans for addressing spillway capacity took place in December 2005, May 2007, July 2007, March 2008, February 2009, November 2009, May 2010, April 2011, April 2012, February 2013, April 2014, October 2014, and April 2015.

[22] August 7, 2006 Letter from the Regional Engineer (Accession No. 20060814-0143).

[23] November 8, 2007 Letter from Frank O. Christie (Accession No. 20071130-0109).

[24] November 14, 2007 Letter from the Regional Engineer (Accession No. 20071126-0212).

[25] November 3, 2008 Letter from the Regional Engineer at 1 (Accession No. 20081110-0229).

[26] *Id.* at 2.

Project No. 10808-058                                                                - 6 -

and it was not in a position to borrow the necessary funds.[27]  As part of this request, Boyce Hydro committed to accumulating funds from the project's net income in an account dedicated to spillway improvement and committed to providing semi-annual reports of the status of its proposed reserved fund account.[28]  Boyce Hydro said it would make the necessary improvements over a three-year period beginning in June 2010.[29]  The Regional Engineer granted Boyce Hydro's request for further extension on February 9, 2009.[30]

11.      Following several more years of Boyce Hydro failing to make any significant progress, on February 11, 2014, the Regional Engineer accepted a new schedule that would allow Boyce Hydro to complete construction of its proposed auxiliary spillways by the end of 2015.[31]  The spillway designs that Boyce Hydro had submitted were not sufficient to pass the full PMF, but the Regional Engineer wrote that he would accept them as an interim risk reduction measure.

12.      Boyce Hydro failed to make progress on the schedule for those interim measures. The Regional Engineer and Boyce Hydro then agreed on a new set of intermediate deadlines for the Tobacco auxiliary spillway.[32]  That schedule kept December 15, 2015, as the deadline for completion of construction.

13.      Boyce Hydro modified its proposal for the auxiliary spillways again, and the Regional Engineer extended the deadlines further on December 5, 2014.[33]  The new

---

[27] November 26, 2008 Letter from Michael A. Swiger & John H. Clements (Counsel to Boyce Hydro) (Accession No. 20081126-5172).

[28] *Id.*

[29] *Id.*

[30] February 9, 2009 Letter from the Regional Engineer (Accession No. 20090219-0089).

[31] February 11, 2014 Letter from the Regional Engineer (Accession No. 20140221-0196).

[32] July 22, 2014 Letter from the Regional Engineer (Accession No. 20140729-0198); July 28, 2014 Letter from Frank O. Christie, P.E. (Accession No. 20140812-0284).

[33] December 5, 2014 Letter from the Regional Engineer (Accession No. 20141208-5099).

schedule included deadlines for filing certain plans and specifications, monthly progress reports, and new construction benchmarks. Pursuant to that schedule, an initial auxiliary spillway would be constructed by November 14, 2015, on the Tobacco side of the project, and the second auxiliary spillway would be constructed by December 31, 2016, on the Tittabawassee side of the project. Boyce Hydro failed to meet these new deadlines, as well as other deadlines, and has yet to file complete and adequate plans for either auxiliary spillway despite receiving numerous extensions of time to complete certain design phase analyses and to file documents.

14.    On June 15, 2017, Commission staff issued a Compliance Order detailing Boyce Hydro's failure to remediate the spillway deficiencies, as well as its failure to comply with a number of other license and regulatory requirements, as discussed below.

### B.    Failure to Comply with other License Conditions

15.    The 2017 Compliance Order details the licensee's long history of other violations at the Edenville Project.[34] These violations, described more fully below, include: (1) performing unauthorized dam repairs in violation of Regional Engineer directives pursuant to Standard Article 4 of the license and Part 12 of the Commission's regulations;[35] (2) performing unauthorized earth-moving activities in violation of Standard Articles 19-21 of the license; (3) failing to file an adequate Public Safety Plan in violation of Standard Article 4 of the license and Part 12 of the Commission's regulations; (4) unduly restricting public access to project facilities and failing to construct and maintain approved recreation facilities in violation of Standard Article 18 and Article 410 of the license and the Commission's Order Modifying and Approving Recreation Plan;[36] (5) failing to acquire and document all necessary project property rights in violation of Standard Article 5 of the license; and (6) failing to comply with the Commission's 1999 Order approving Boyce Hydro's Water Quality Monitoring Plan and Article 402 of the license.[37]

16.    In 2015, Commission staff noted that Boyce Hydro had performed unauthorized repairs to the right Tobacco abutment spillway wall in violation of Part 12 of the

---

[34] 2017 Compliance Order, 159 FERC ¶ 62,292.

[35] 18 C.F.R. pt. 12 (2018).

[36] *Wolverine Power Corporation,* 96 FERC ¶ 62,055 (2001).

[37] *Wolverine Power Corporation,* 87 FERC ¶ 62,365 (1999).

Commission's regulations.[38] Specifically, the licensee violated section 12.10 of the Commission's regulations for not reporting that the wall was failing (a dam safety incident),[39] section 12.11 for not reporting that it repaired the wall,[40] section 12.4(b)(2)(ii) for not filing its proposed plans and specifications prior to making the repairs,[41] section 12.40 for not filing a quality control inspection program for the repairs,[42] section 12.39(a) for failing to file a plan and schedule to address repair needs identified in the Part 12D report,[43] and Standard Article 4 of the license for failing to follow the Regional Engineer's directives in addressing each of these violations. Even after being informed by the Regional Engineer of these violations,[44] Boyce Hydro proceeded with unauthorized repairs to the left Tobacco abutment spillway wall, as noted in a letter from the Regional Engineer to the licensee issued October 27, 2016.[45]

17.    Boyce Hydro also performed a significant amount of unauthorized earth-moving activity, as noted during an August 2014 Environmental Inspection of the project and detailed by the Regional Engineer between March 2015 and June 2016.[46] The licensee violated Standard Article 20 of the license for unauthorized clearing of lands, Standard Article 21 of the license for unauthorized dredging and filling of earth at the project, and Standard Article 19 of the license for failing to implement and maintain appropriate soil erosion control measures. The unauthorized earth-moving and land-clearing activities involved significant impacts to large areas of land above and beyond what would be involved in regular project maintenance, employed little or no erosion control measures,

---

[38] September 9, 2015 Letter from the Regional Engineer (Accession No. 20150910-5020).

[39] 18 C.F.R. § 12.10 (2018).

[40] *Id.* § 12.11.

[41] *Id.* § 12.4(b)(2)(ii).

[42] *Id.* § 12.40.

[43] *Id.* § 12.39(a).

[44] *See* Letters from the Regional Engineer dated September 9, 2015, June 8, 2016, and August 11, 2016.

[45] October 27, 2016 Letter from the Regional Engineer (Accession No. 20161027-5222).

[46] 2017 Compliance Order, 159 FERC ¶ 62,292 at P 54.

Project No. 10808-058                                                                 - 9 -

and created large areas of bare soil that were not revegetated.  Boyce Hydro was also found in violation of Standard Article 4 of the license for failing to follow the Regional Engineer's directives to cease earth-moving activity, ignoring directives, and failing to file soil erosion control plans.[47]

18.     Additionally, Boyce Hydro violated Standard Article 4 of the license by failing to file an acceptable Public Safety Plan as directed by the Regional Engineer in a letter dated August 1, 2013.[48]  Boyce Hydro filed several draft Public Safety Plans that Commission staff rejected because the draft plans conflicted with Boyce Hydro's approved Recreation Plan.[49]  Boyce Hydro has yet to file an acceptable plan.

19.     Violations extend to recreation matters at the project as well.  As detailed in the 2017 Compliance Order, Boyce Hydro is in violation of its license for failing to construct recreation facilities as required by its approved Recreation Plan, and for failing to provide as-built drawings of constructed recreation facilities.[50]  The licensee was required to implement its Recreation Plan by October 15, 2007, and Boyce Hydro has still not constructed many of these facilities.  Further, the licensee has constructed other facilities, including a fishing platform, in a manner and location that does not conform to its approved plan.  The licensee also erected fences and other barriers to unreasonably restrict public access in violation of Standard Article 18 of its license for unnecessarily restricting public access to project lands and waters.[51]

20.     Boyce Hydro was also found in violation of Standard Article 5 of its license for failing to provide documentation that it had obtained, either through fee ownership or other means, the rights to all land needed for project purposes within the project boundary.  In 2010, Commission staff required Boyce Hydro to file a status report

---

[47] *Id.*

[48] *Id.* P 83.

[49] *Id.* P 86 (noting that the proposed plans included signs and barriers that do not allow for public access to recreation areas shown in the project's Recreation Plan).

[50] As noted in the Compliance Order, the Michigan Department of Natural Resources has also attempted to work with the licensee to resolve recreation issues and has filed numerous emails and letters with the Commission describing the licensee's lack of progress. *Id.* P 111.

[51] *Id.* P 110.

identifying the rights it held for the Edenville Project.[52]  Despite being granted multiple extensions of time, the licensee filed incomplete information and did not remedy its noncompliance until after Commission staff issued the 2017 Compliance Order.[53]

21.    Finally, Boyce Hydro was found in violation of a 1999 Order approving the licensee's Water Quality Monitoring Plan.[54]  Specifically, the 1999 order requires the licensee to connect water quality monitoring equipment to the project's SCADA system.[55]  The license and the project's approved Water Quality Monitoring Plan require the licensee to monitor dissolved oxygen (DO) and temperature and to adjust project operations to mitigate low DO conditions in the tailrace by enacting corrective actions in a timely manner.  The licensee had tested or investigated various methods for improving DO, such as spilling water, using aeration curtains, and syphoning water from deeper and cooler areas of the reservoir; however, without a SCADA connection to its monitoring equipment, the licensee would not know when to take corrective actions in response to low DO conditions, nor could the licensee or others determine the extent to which project operation may affect water quality.[56]

---

[52] *Id.* P 117 (noting that in 2010, Commission staff discovered that the licensee did not have all necessary rights to lands within the project boundary of its Sanford Hydroelectric Project No. 2875).

[53] In filings made with the Commission on July 26, 2017, August 22, 2017, and January 22, 2018, Boyce Hydro states that it possesses the necessary property rights over the land within the project boundary and that it has acquired rights to land (and has ability to acquire rights to additional land) that may be necessary to complete construction of the Tobacco River auxiliary spillway.  However, because the licensee has not provided plans and specifications for the Tittabawassee auxiliary spillway or provided other documentation specific to where the Tittabawassee auxiliary spillway will be constructed, Commission staff is still uncertain if the licensee has, in fact, obtained rights to all land necessary for the construction of the Tittabawassee auxiliary spillway, as required by the 2017 Compliance Order.

[54] *Wolverine Power Corporation*, 87 FERC ¶ 62,365 (1999).

[55] SCADA stands for Supervisory Control and Data Acquisition and allows for remote system monitoring and control.

[56] The licensee filed documentation that it had installed water quality monitoring equipment and had connected this equipment to the project's SCADA system, as well as documentation that the equipment is in good working order, pursuant to Ordering

Project No. 10808-058                                                                  - 11 -

### C. June 15, 2017 Compliance Order

22.    As stated above, Commission staff issued the 2017 Compliance Order, detailing
staff's multi-year effort to bring Boyce Hydro into compliance with the terms and
conditions of its license, and with related provisions of the FPA, the Commission's
regulations, and Commission orders.[57]  The 2017 Compliance Order describes in detail
the violations discussed above.  Ordering Paragraphs (A) through (M) of the 2017
Compliance Order requires Boyce Hydro to provide the specific plans, specifications,
reports, and other information needed to address the various violations identified in
the order, and to come into compliance with the Commission's regulations and the terms
of its license.[58]

23.    On July 14, 2017, the Boyce Hydro filed a request for a 30-day extension of time
to comply with the following requirements in the 2017 Compliance Order:  (1) file a
complete design package for a Tobacco auxiliary spillway; (2) file plans, specifications,
and a schedule to construct a Tittabawassee auxiliary spillway; (3) file a plan and
schedule for additional modifications to the project to meet the full PMF; and (4) file
complete plans and specifications for permanent repairs to both left and right Tobacco
abutment spillway walls.  On July 27, 2017, Boyce Hydro sought an additional 30-day
extension for the same requirements.  These extensions were granted, with the exception
of Boyce Hydro's request for an additional 30-day extension to file a plan and schedule
for additional modifications to the project to meet the full PMF, which the order
determined could be completed in the time provided in the first 30-day extension because
it did not require the licensee to file actual design documents.[59]  The extensions were
granted based on representations made by Boyce Hydro regarding steps that it was taking
to satisfy the requirements of the 2017 Compliance Order.  However, Boyce Hydro still
has not filed the required information.

---

Paragraph (L) of the 2017 Compliance Order.  Therefore, the licensee complied with the
2017 Compliance Order with respect to this requirement.

[57] 2017 Compliance Order, 159 FERC ¶ 62,292.

[58] *Id.* at Ordering Paragraphs (A) through (M).

[59] The first order granting Boyce Hydro an extension of time also granted Boyce
Hydro an additional 30 days to provide documentation that it has the necessary land
rights to build both the Tobacco and Tittabawassee auxiliary spillways.

Project No. 10808-058                                                                          - 12 -

24.    Boyce Hydro failed to make the filings required by Ordering Paragraphs (B), (D), (F), (G), (J), and (K) of the 2017 Compliance Order, as summarized below:

(1)    Ordering Paragraph (B) required the licensee to file, by August 14, 2017 (extended to November 14, 2017), a complete design package with the Regional Engineer for a Tobacco auxiliary spillway.  The design package was required to address fully all items noted in the Regional Engineer's June 6, 2016 letter to the licensee.

(2)    Ordering Paragraph (D) required the licensee to file with the Regional Engineer, by August 14, 2017 (extended to November 14, 2017), plans, specifications, and a schedule to construct a Tittabawassee auxiliary spillway.

(3)    Ordering Paragraph (F) required the licensee to file with the Regional Engineer, by October 13, 2017 (extended to November 14, 2017), a plan and schedule for additional modifications to the project to meet the full (100 percent) PMF for the project.

(4)    Ordering Paragraph (G) required the licensee to file with the Regional Engineer, by July 30, 2017 (extended to September 30, 2017), complete plans and specifications for permanent repairs to both left and right Tobacco abutment spillway walls, a complete work schedule, detailed drawings, a water management plan, an erosion control plan, a Temporary Construction Emergency Action Plan, and a Quality Control Inspection Program, as originally specified in the Regional Engineer's December 8, 2016 letter to the licensee.

(5)    Ordering Paragraph (J) required, by September 13, 2017, the licensee to provide reasonable access to project lands and waters to the public and to file documentation that such access has been provided.[60]  Boyce Hydro was also required to provide a statement affirming its compliance with the access provisions of Article 18, which, as established by the 2017 Compliance Order and letters from the Regional Engineer, included compliance with the project's approved Recreation Plan.

---

[60] Boyce Hydro was required to provide photographs showing that gates restricting access to parking and fishing areas are open, that fencing blocking access to recreation features had been removed, and that reasonable access to the water is allowed.

Project No. 10808-058                                                           - 13 -

     (6)    Ordering Paragraph (K) required the licensee to file with the Regional Engineer, by September 13, 2017, a complete design package for construction of all recreation facilities required by the project's approved Recreation Plan.[61]

25.    The 2017 Compliance Order concluded that the Commission's primary concern is Boyce Hydro's longstanding failure to address the project's inadequate spillway capacity, which must be remediated to protect life, limb, and property.[62]  The 2017 Compliance order further noted that Boyce Hydro has shown a pattern of delay and indifference to addressing dam safety requirements and this pattern of non-compliance extends to other conditions in the license as well.  The 2017 Compliance Order required Boyce Hydro to expeditiously address the violations within specified time frames, and the licensee was reminded that its failure to adhere to the deadlines in the order might result in an order to cease generation, the imposition of civil penalties, or revocation of the license.

26.    On June 19, 2017, the Michigan Department of Natural Resources (Michigan DNR) filed a request for clarification, which stated that it agreed that it is critical that the project be brought into compliance with the directives issued by the Commission.[63]  Michigan DNR further noted that the 2017 Compliance Order provided a comprehensive summary of the issues related to Boyce Hydro's long-standing noncompliance of the Commission-approved Recreation Plan.

### D.    **Order Requiring Boyce Hydro to Cease Generation**

27.    On November 20, 2017, responding to Boyce Hydro's violation of the 2017 Compliance Order, Commission staff issued an order requiring the licensee to cease

---

[61] The approved recreation facilities for the Tittabawassee River side of the project include:  a parking lot for 15 cars off of State Highway 30, a parking lot with two handicapped spaces, a barrier-free restroom, a railed handicapped-accessible fishing pier next to the powerhouse, two canoe portages, access paths, and signs that identify the recreation facilities.  The approved recreation facilities for the Tobacco River side include:  a parking lot for 15 cars off of State Highway 30, an access path, stairs to a railed fishing pier, and signs that identify the recreation facilities.  As-built drawings were also required.

[62] 2017 Compliance Order, 159 FERC ¶ 62,292 at P 146.

[63] June 19, 2017 Michigan DNR Request for Clarification (Accession No. 20170619-5134).

Project No. 10808-058                                                                    - 14 -

generation at the project.[64]  The Cease Generation Order found that the licensee had not complied with the specific ordering paragraphs in the 2017 Compliance Order cited in paragraph 24 above.[65]  The order also found that since issuance of the 2017 Compliance Order, Boyce Hydro had failed to comply with two new dam-safety related directives issued pursuant to Part 12 of the Commission's regulations and Standard Article 4 of the license.[66]

28.    The Cease Generation Order cited section 309 of the FPA which authorizes the Commission "to perform any and all acts, and to … issue … such orders … as it may find necessary or appropriate to carry out the provisions of the [FPA]"[67] and noted that Commission staff provided repeated and specific notice to the licensee that continued non-compliance could result in the Commission issuing a cease generation order, assessing civil penalties, or revoking the project's license pursuant to section 31 of the FPA.[68]

29.    The Cease Generation Order further stated that Commission staff had worked with the licensee for over 13 years on the spillway capacity issue and had sent numerous letters and other communications directing the licensee to bring the project into compliance, and, notwithstanding multiple extensions and other accommodations by staff, the licensee still did not make substantial progress meeting its compliance obligations.[69]  The order also referred the matter to the Commission's Office of Enforcement for further action including possibly penalties, license revocation, or other action.[70]

---

[64] *Boyce Hydro Power, LLC*, 161 FERC ¶ 62,119 (2017) (Cease Generation Order), *reh'g denied*, 162 FERC ¶ 61,116 (2018) (Cease Generation Rehearing Order).

[65] Cease Generation Order, 161 FERC ¶ 62,119 at P 7.

[66] *Id.* P 10.

[67] *Id.* P 12.

[68] *Id.* (citing 2017 Compliance Order, 159 FERC ¶ 62,292 at P 149 and November 14, 2016 Letter from the Regional Engineer (Accession No. 20161115-5085)).

[69] Cease Generation Order, 161 FERC ¶ 62,119 at P 13.

[70] *Id.*

Project No. 10808-058                                                                    - 15 -

30.     On February 7, 2018, the U.S. Court of Appeals for the D.C. Circuit granted, in part, Boyce Hydro's motion for a stay of the Cease Generation Order.[71]  Boyce Hydro was permitted to resume generation (and make energy sales) as of February 7, 2018.[72]

### E.     Order Proposing Revocation

31.     On February 15, 2018, the Commission issued an Order Proposing Revocation of the license pursuant to section 31(a) of the FPA.[73]  After detailing Boyce Hydro's violations of the 2017 Compliance Order and multiple extensions granted by the Commission, the order concluded that there was no reason to believe that Boyce Hydro intended to come into compliance, and therefore, proposed revoking the license.[74]

32.     The Order Proposing Revocation provided Boyce Hydro with the opportunity to request an evidentiary hearing before an Administrative Law Judge.[75]  Boyce Hydro did not request a hearing, and therefore we decide this matter based on the written record.[76]

## II.     Procedural Issues

### A.     Motions to Intervene, Comments, and Answers

33.     Following issuance of the Order Proposing Revocation, motions to intervene were filed by Consumers Energy Company, the Gladwin County Board of Commissioners, the Michigan Department of Natural Resources, the Sanford Lake Preservation Association,

---

[71] *See In re: Boyce Hydro Power, LLC*, No. 17-1270 (D.C. Cir. Feb. 7, 2018).

[72] Boyce Hydro also filed with the D.C. Circuit a petition for review challenging the Cease Generation Order and Cease Generation Rehearing Order.  *Boyce Hydro Power, LLC v. FERC*, D.C. Cir. No. 18-1097.  The court granted Boyce Hydro's motion to hold the case in abeyance until the Commission makes a final determination with respect to its proposed revocation of the project license.

[73] *Boyce Hydro Power, LLC*, 162 FERC ¶ 61,115 (2018) (Order Proposing Revocation).

[74] *Id*. P 10.

[75] *See* 16 U.S.C. § 823b(b) (2012).

[76] Order Proposing Revocation, 162 FERC ¶ 61,115 at P 11 ("If the licensee does not request a hearing, the Commission will decide this matter based on the written record.").

Tobacco Township, and the Wixom Lake Association.  On April 18, 2018, the Commission issued a notice granting these motions.

34.     In their motions to intervene, Wixom Lake Association and the Gladwin County Board of Commissioners asked the Commission to ensure that any revocation of the license would not compromise recreational opportunities at the project.  In addition, the Sanford Lake Preservation Association expressed its concern that revoking the Edenville project license would enable Boyce Hydro to lower Sanford Lake, which is the reservoir for Boyce Hydro's Sanford Hydroelectric Project No. 2785 located downstream of the Edenville Project, below its minimum operating level contained in its license.  On March 14, 2018, Boyce Hydro filed an answer to Wixom Lake Association's motion to intervene, stating that if the Commission revokes the license, the Commission would have no continuing authority over project property and that Boyce Hydro would likely close all public recreation facilities.

### B.      Boyce Hydro's Motion to Withdraw Order Proposing Revocation

35.     Rather than request an administrative hearing pursuant to section 31(b) of the FPA, on March 16, 2018, Boyce Hydro filed a motion requesting that the Commission withdraw its order proposing revocation of the license.  In general, Boyce Hydro argues that: (1) it has made progress in funding the construction of the Tobacco River auxiliary spillway; (2) it has made all reasonable efforts to comply with the 2017 Compliance Order's requirements; and (3) revoking the license would not be in the public interest.  On April 20, 2018, Commission staff issued an information request regarding statements in Boyce Hydro's motion.  Boyce Hydro filed responses on May 18 and 29, 2018.  Boyce Hydro's motion and its responses are addressed fully below.

### C.      Request to Delay Decision on Revocation

36.     On April 12, 2018, the Wixom Lake Association and the Sanford Lake Association (collectively, Lake Associations) requested that the Commission delay its decision related to the revocation of Boyce Hydro's license until November 1, 2018.[77] The Lake Associations request the delay to investigate the possibility of transitioning the project to a public or not-for-profit corporation.  On July 30, 2018, the Lake Associations filed a progress report with the Commission stating that a task force had been created for this effort, with a final report due by December 31, 2018.  In addition, the Lake Associations have been working toward the goal of establishing lake levels through the

---

[77] Congressman John Moolenaar, the Attorney General of the State of Michigan, the Midland County Board of Commissioners, and the Gladwin County District Board of Commissioners filed letters in support of the Lake Associations' request.

Project No. 10808-058                                                           - 17 -

State of Michigan.  The Lake Association requested that the Commission continue to withhold action on the Order Proposing Revocation.

37.    The Lake Associations are free to attempt to acquire the project or certain project facilities (e.g. the dam) once this termination order becomes effective and may continue their efforts establishing lake levels through the State of Michigan.  Moreover, should the Lake Associations ultimately acquire the project, nothing in this order prevents them from seeking a Commission license for the project in the future should they wish to use the project to generate power.  However, in light of Boyce Hydro's continued noncompliance with important dam safety requirements that have the potential to affect public safety, and for the reasons described below, it would not be in the public interest to further delay our action.

## III.    Discussion

38.    Under section 31(b),[78] after notice and an opportunity for an evidentiary hearing,[79] the Commission may issue an order revoking a license, where the licensee is found by the Commission to have knowingly violated a final order issued pursuant to section 31(a) after having been given reasonable time to comply fully with that order.[80]

39.    As detailed above, Boyce Hydro has failed to comply with numerous requirements of its license related to dam safety, recreation, and other resources.  The record demonstrates that Commission staff has engaged in intensive efforts over the past 14 years to bring the licensee into compliance.  The record also demonstrates that Boyce Hydro has continually failed to comply with these directives.  Boyce Hydro has also failed to comply with the 2017 Compliance Order, which set out specific requirements that must be met in order to achieve compliance with the license, Commission regulations, and prior orders.

---

[78] 16 U.S.C. § 823b(b) (2012).

[79] As stated above, Boyce Hydro did not request an evidentiary hearing.

[80] *See, e.g., Eastern Hydroelectric Corp.*, 149 FERC ¶ 61,036 (2014), *reh'g denied*, 150 FERC ¶ 61,099 (2015) (revoking license for failure to construct a required fish passage); *Virginia Hydrogeneration and Historical Society, L.C.*, 104 FERC ¶ 61,282 (2003) (proposing revocation of license for failure to comply with environmental conditions); *Energy Alternatives of North America, Inc.*, 68 FERC ¶ 61,196 (1994) (proposing revocation of the license for failure to comply with public safety requirements).

40.    Notably, Boyce Hydro did not request an evidentiary hearing to challenge the factual basis of the Order Proposing Revocation, and Boyce Hydro does not dispute that it has failed to comply with the Commission's directives.[81]  Rather, Boyce Hydro alleges that revocation of the license would not be in the public interest because:  (1) it has made significant progress in improving the spillway capacity at the project; (2) it has done everything reasonably possible to satisfy the 2017 Compliance Order's requirements given Boyce Hydro's financial constraints; (3) revoking the license would not address the Commission's primary concern regarding the inadequate spillway capacity; and (4) revoking the license would require Boyce Hydro to close all project-required public recreation facilities.[82]

41.    With respect to resolving the project's inadequate spillway capacity, Boyce Hydro states that it has secured a funding commitment from Johnston Contracting, Inc. (Johnston Contracting) for joint funding[83] of the Tobacco River auxiliary spillway, which could enable construction to be completed before the end of 2019.[84]  Boyce Hydro avers that a final financing arrangement will be completed after the Commission approves a final design for the project, at which time Boyce Hydro and Johnston Contracting will be able to accurately estimate the project's total cost.[85]  With respect to completion of the final designs, Boyce Hydro claims that actions to complete the design package are ongoing and that significant progress has been made.[86]  Boyce Hydro further states that once the Tobacco River auxiliary spillway is completed, the project's spillway capacity

---

[81] Boyce Hydro's Motion to Withdraw at 5 ("[Boyce Hydro] does not dispute that it has not yet completed all the requirements of the 2017 Compliance Order.").

[82] *Id.* at 1-2.

[83] *Id.* at 6.  To assist in funding the necessary construction, Boyce Hydro committed to placing 50 percent of gross revenues from the project into escrow until sufficient money is accumulated to ensure that the Tobacco spillway is constructed. Boyce Hydro states that it began to escrow funds effective February 10, 2018. *Id.* at 6-7.

[84] *Id.* at 6.  Because Boyce Hydro has not pursued further steps in designing the spillway since the Commission's Order Proposing Revocation, Boyce Hydro states that it now anticipates that construction could commence in September 2019 with completion in November 2020. *See* Boyce Hydro's May 29, 2018 Data Response at 10 (Accession No. 20180529-5194).

[85] Boyce Hydro's Motion to Withdraw at 7.

[86] *Id.* at 7-8.

Project No. 10808-058                                                      - 19 -

will be 56 percent of the PMF.[87]  Boyce Hydro notes that once Johnston Contracting has been fully paid for construction of the Tobacco River auxiliary spillway, it can then begin working to meet the full (100 percent) PMF.[88]

42.    Boyce Hydro also argues that the Commission failed to acknowledge that it submitted a schedule for completing some of the required work in a request for extension that it included in its Motion for Emergency Stay of the Cease Generation Order.[89] Boyce Hydro states that once an enlarged Tobacco spillway is constructed, it will revise the previously submitted plan to modify the existing gated spillways over a six-year period which, when completed, will enable the project to pass the full PMF.[90]

43.    We disagree that Boyce Hydro has made significant progress toward increasing spillway capacity.  It has not submitted any of the plans and design packages required by Ordering Paragraphs (B) and (D) of the 2017 Compliance Order.  Nor has it provided any evidence that completion of plans and design packages is imminent.  In fact, Boyce Hydro claims to have abandoned the work that it had been doing on the designs to expand the Tobacco and Tittabawassee spillways, which Ordering Paragraphs (B) and (D) of the 2017 Compliance Order required to be done by July 15, 2017 (extended to September 18, 2017), and August 14, 2017 (extended to November 14, 2017), respectively.[91]

44.    Boyce Hydro also claims to have hired Gomez and Sullivan Engineers, PC (Gomez and Sullivan) to start an entirely new set of designs, having abandoned work on the existing plans and design packages in September 2017, the date when Boyce Hydro was required to file the Tobacco spillway design package.  When the Commission requested a copy of the agreement with Gomez and Sullivan to evaluate the scope and

---

[87] *Id.*  Boyce Hydro asserts that the enlarged capacity of the design will obviate the need for a second auxiliary spillway on the Tittabawassee River side of the dam.  *Id.*

[88] *Id.* at 8.

[89] *Id.* at 10.

[90] *Id.*

[91] *See* Boyce Hydro's May 29, 2018 Data Response at 3 (Accession No. 20180529-5194) (noting that the Tobacco spillway design was modified in September 2017 obviating the need for a second phase spillway project located on the Tittabawassee River side of the dam).

Project No. 10808-058                                                                    - 20 -

schedule of work, Boyce Hydro refused to provide that agreement.[92]  It subsequently admitted that it had stopped working on the new designs in February 2018.[93]

45.    Moreover, its new proposal would only bring the spillway capacity to 56 percent of the PMF, well below the Commission's standards and the requirement specified in Ordering Paragraph (F) of the 2017 Compliance Order, which required a plan and schedule for 100 percent of PMF by October 13, 2017 (extended to November 14, 2017). Boyce Hydro has no definitive timetable for making improvements necessary to pass the full PMF.[94]  Instead, Boyce Hydro asserts that "[t]he Commission is well aware that [Boyce Hydro] cannot specify a date when the project will be able to pass the full PMF."[95]  Boyce Hydro claims that it cannot specify a date or schedule because the financial constraints of the project make it impossible to determine when it will accumulate enough funding.[96]  However, based on Boyce Hydro's prior history of missed deadlines, even after Commission staff allowed the work to proceed in phases, were the Commission to accept Boyce Hydro's proposal, the project's inadequate spillway capacity would remain in noncompliance for years to come.[97]

46.    Boyce Hydro's proposed funding mechanism also fails to demonstrate that it has made substantial progress towards meeting the obligations of the June 2017 Compliance Order or the terms and conditions of the license.  Boyce Hydro claims that it lacks the money necessary to comply with the 2017 Compliance Order, but in response to a Commission information request, it admits that it had not asked any financial institution

---

[92] Boyce Hydro asserts that this agreement is confidential and proprietary.  Boyce Hydro's May 29, 2018 Data Response at 4 (Accession No. 20180529-5194).

[93] Id. at 9 (stating that additional design work was not done because of the Commission's Order Proposing Revocation).

[94] Id. at 10-11.

[95] Id. at 10.

[96] Boyce Hydro also notes that other factors, such as what specific modifications will be acceptable to the Commission, how long it will take the Commission to determine that future design submittals are satisfactory, and the time and expense required to obtain associated state permits, also make predicting an exact timeframe impossible. Id. at 10-11.

[97] See Boyce Hydro's Motion to Withdraw at Attachment C (proposing to file plans and a schedule for modification to meet the full PMF within 180 days of Commission approval of the Tittabawassee auxiliary spillway plans and specifications).

Project No. 10808-058                                                                                    - 21 -

for a loan or any other funding.[98]  It claims that Johnston Contracting will finance construction of the initial expansion of spillway capacity, but admits that it did not engage Johnston Contracting until February 15, 2018, the same day the Commission issued its Order Proposing Revocation of the license.[99]  It took eight months and the initiation of revocation proceedings for Boyce Hydro to take the first step toward finding funding for the required work, but even that step did not constitute significant progress.  Boyce Hydro admits that it does not have a firm financing commitment from Johnston Contracting because "there is not yet an agreement regarding the amount of money Johnston Contracting is willing to provide or the terms of repayment," and the funding commitment is contingent upon the parties negotiating "mutually agreeable terms and conditions" that cannot even be established until a final design is developed.[100]  At least by May 18, 2018 (the date on which it responded to the Commission's information requests), Boyce Hydro and Johnston Contracting had not negotiated any of those terms of conditions.[101]  Last, Boyce Hydro's proposed escrow funding mechanism is essentially the same as its previous proposal that failed to fund needed construction.[102]  Therefore, although Boyce Hydro asserts that the Tobacco auxiliary spillway may be completed by 2019, the record does not support that such a prediction is likely or even reasonable.

47.    Nor has Boyce Hydro made significant progress in developing the plans and specifications and related documents for permanent repairs to both the left and right Tobacco River abutment spillway walls, which were required by Ordering Paragraph (G) of the 2017 Compliance Order to be filed by July 30, 2017 (extended to September 30, 2017).  Boyce Hydro has not filed those plans and documents, and in its Motion to Withdraw, suggested that it does not anticipate doing so until at least 90 days after the Commission approves the unfiled and overdue Tobacco auxiliary spillway design package.[103]

---

[98] Boyce Hydro's May 29, 2018 Data Response at 3 (Accession No. 20180529-5194)

[99] *Id.* at 2 ("The only external source from which [Boyce Hydro] has sought financing for the engineering/design or construction of the Tobacco River auxiliary spillway or future spillway gate capacity increases is Johnston Contracting."),

[100] *Id.*

[101] *Id.*

[102] *See supra* P 10.

[103] Boyce Hydro's Motion to Withdraw at Attachment C.

Project No. 10808-058                                                          - 22 -

48.     Next, Boyce Hydro argues that it has done everything reasonably possible to comply with the requirements in the 2017 Compliance Order.[104]  Boyce Hydro asserts that because construction of the Tobacco spillway would deprive it of a large portion of its revenues, further extensions of time are needed to repair the spillway walls and meet the remainder of the PMF.[105]  Boyce Hydro asserts that it has previously supported its financial constraints with sworn affidavits and financial statements and that any evaluation as to whether it has been given a reasonable amount of time to comply should take into account the financial constraints that it is under.[106]  Boyce Hydro contends that the Commission's refusal to acknowledge this reality and grant further extensions of time or stays is unreasonable.[107]

49.     We reiterate our finding in the Cease Generation Rehearing Order that "a licensee's requirement to satisfy all license terms does not change, regardless of whether revenues exceed, match, or fail to meet its costs."[108]  As stated in the order, if the Commission were to take such considerations into account, "licensees could decline to meet their public interest obligations if they alleged that their projects were not profitable."[109]  Should a licensee determine that it is incapable of meeting the Commission's license requirements, the remedy cannot be for a licensee to continue to benefit from the license while remaining in noncompliance.

50.     Further, Boyce Hydro has not substantiated its claims regarding financial hardship with evidence.  It admits that it has not sought financing from a bank or other financial institution and has refused to provide basic information regarding its financial resources. When the Commission requested information concerning current assets and liabilities,[110] or financial information concerning any trust holding a membership interest in Boyce Hydro, Boyce Hydro responded: "[t]his information is private and confidential and is not

---

[104] Boyce Hydro's Motion to Withdraw at 8.

[105] Boyce Hydro also states that it has previously requested a stay of the recreation requirements.  *Id.*

[106] *Id.* at 9.

[107] *Id.* at 9.

[108] Cease Generation Rehearing Order, 162 FERC ¶ 61,116 at P 20.

[109] *Id.*

[110] Boyce Hydro's May 29, 2018 Data Response at 3-4 (Accession No. 20180529-5194).

germane to the subject of the license matter at hand and is therefore not available for disclosure."[111]  The Commission will not rely on factual representations regarding Boyce Hydro's financial status when it later claims evidence regarding those representations is not germane to the matter at hand.

51.      Finally, Boyce Hydro's assertion that it has not had a reasonable amount of time to comply wrongly assumes that its failures only arose when Commission staff issued the 2017 Compliance Order.  As we detailed above, Commission staff repeatedly implored Boyce Hydro (and its predecessor) to increase the project's spillway capacity and to meet its other license obligations.  We find it inconceivable that over the last 14 years Boyce Hydro has been unable to dedicate funds to remedy its noncompliance; if indeed it cannot do so, it does not have the wherewithal to protect the public interest in the manner required of a licensee.  Moreover, Boyce Hydro made little effort during the eight months between issuance of the Compliance Order and initiation of revocation proceedings (or, for that matter, in the six months since) to find the necessary funds or otherwise comply with the outstanding obligations.  Therefore, particularly in light of Boyce Hydro's long history of missed deadlines and its failure to made significant progress toward remedying its noncompliance after issuance of the Compliance Order, we find consistent with section 31(b)(2) that Boyce Hydro was given a reasonable time to comply fully with the Commission's June 15, 2017 Compliance Order prior to commencement of revocation proceedings.

52.      Boyce Hydro also contends that the Order Proposing Revocation wrongly implies that reasonable public access and recreation facilities are not being provided.[112]  Boyce Hydro states that although it has not fully met the requirements of the 2017 Compliance Order, it has certainly done everything it can reasonably do to meet those requirements given its limited resources and the lack of reasonable time to comply.[113]

53.      Boyce Hydro admits that it has not fully met the requirements of the 2017 Compliance Order related to recreation and public access as well.[114]  It did not "provide reasonable access to project lands and waters for the public and . . . file documentation that such access has been provided . . . include[ing] a statement from the licensee

---

[111] *Id.*

[112] Boyce Hydro's Motion to Withdraw at 10.

[113] *Id.* at 11 (providing a table of recreation facilities at the project and their status).

[114] *See* Boyce Hydro's May 29, 2018 Data Response at 12-13 (Accession No. 20180529-5194).

Project No. 10808-058                                                    - 24 -

affirming its compliance with the access provisions of Article 18 [(incorporating requirements of a Commission-approved Recreation Plan)]," as required by Ordering Paragraph (J) of the 2017 Compliance Order.[115]  Nor did it "file with the Regional Engineer, a complete design package for construction of all recreation facilities required by the project's approved Recreation Plan," as required by Ordering Paragraph (K) of the 2017 Compliance Order.  Instead, Boyce Hydro argues that the Commission should use a different standard to judge its compliance, stating that it has provided reasonable public access and recreation, even if it did not meet the Commission-approved Recreation Plan.[116]  The 2017 Compliance Order required Boyce Hydro to take certain steps, including complying with the Recreation Plan.[117]  Boyce Hydro has had over 14 years to comply with that plan, and over one year to comply with the requirements of the 2017 Compliance Order, which is more than a reasonable opportunity.  Boyce Hydro now claims that the recreation facilities approved in the Recreation Plan "were largely unsuitable for the site and inconsistent with the need to maintain the security of the Project's generating facilities and avoid interference with adjoining non-Project lands."[118]  The Recreation Plan was adopted through final Commission order; any changes to that plan must follow the appropriate process, including consultation, filing a revised plan, and Commission review and approval.  Boyce Hydro cannot amend the Commission-approved recreation plan unilaterally.

---

[115] On March 19, 2018, Boyce Hydro filed a letter with the Commission claiming that the public could access the dam for recreation purposes using a road owned by Consumers Energy.  *See* Letter from Lee W. Mueller, at 3 (Accession No. 20180319-5039).  However, after Consumers Energy sent a letter to the Commission correcting the record, Boyce Hydro admitted that its representation was not accurate and suggested that it might seek to negotiate an agreement with Consumers Energy to provide the required access.  *See* Boyce Hydro's May 29, 2018 Data Response at 16 (Accession No. 20180529-5194).  Consumers Energy later sent a second letter indicating that Boyce Hydro's correction of its earlier misrepresentation itself was not accurate.  *See* Letter from James D. W. Roush, at 1 (Accession No. 20180525-5099).

[116] Boyce Hydro's Motion to Withdraw at 10-11.

[117] 2017 Compliance Order, 159 FERC ¶ 62,292 at Ordering Paragraph (K).  In a March 8, 2018 letter, Michigan DNR states that during a March 5, 2018 site visit, it observed conditions demonstrating that Boyce Hydro still had not complied with the Commission's directives.  March 8, 2018 Letter from Michigan DNR (Accession No. 20180308-5051).

[118] Boyce Hydro's May 29, 2018 Data Response at 12 (Accession No. 20180529-5194).

Project No. 10808-058                                                                 - 25 -

54.    Next, Boyce Hydro avers that although section 31(b) does not specifically require the Commission to take into account the effect of its actions on public safety, revocation of the license would do nothing to improve spillway capacity because it would eliminate the source of income needed to maintain and upgrade the dam.[119] Boyce Hydro argues that the Commission failed to explain why public safety would not be affected by handing off its problem to the State of Michigan, which would then be responsible for dam safety oversight.[120] Boyce Hydro contends that such a position is at odds with the Commission's prior precedent that license surrenders are conditioned, "at a minimum" on "measures to ensure public safety."[121] Boyce Hydro asserts that the Commission wrongly relies on *Eastern Hydroelectric Corp.*[122] to support the notion that public safety is protected merely by turning over a dam to state regulators.[123] Boyce Hydro states that the facts in *Eastern Hydroelectric Corp.* are distinguishable because the project was significantly smaller and classified as having a "low" potential hazard classification.[124] Thus, Boyce Hydro concludes that revocation of this project license would not be in the public interest.

55.    We disagree that revocation of the license has the potential to harm public safety. As noted in the Order Proposing Revocation, the Michigan Department of Environmental Quality (Michigan DEQ) has regulatory authority over dams and impoundments in the state and will have authority over the Edenville Project as a result of this revocation.[125] Michigan DEQ regulates over 1,000 dams,[126] and has extensive regulatory authority to

---

[119] Boyce Hydro's Motion to Withdraw at 11-12.

[120] *Id*. at 12.

[121] *Id*. at 12-13 (citing *PacifiCorp*, 108 FERC ¶ 61,130, at P 18 (2004) and *Flambeau Paper Corp.*, 53 FERC ¶ 61,063, at 61,203 (1990) ("[a] dam whose safety has not been verified is a potentially dangerous dam, and FERC regards the existence of such a potential danger as a matter of the utmost concern and seriousness").

[122] 148 FERC ¶ 61,028 (2014).

[123] Boyce Hydro's Motion to Withdraw at 13.

[124] *Id.*

[125] *See* Mich. Comp. Laws § 324.31506.

[126] Michigan Department of Environmental Quality, Dam Safety Overview, https://www.michigan.gov/deq/0,4561,7-135-3313_3684_3723-9515--,00.html.

Project No. 10808-058                                                        - 26 -

ensure that dams are constructed, operated, and maintained safely.[127]  For example, Michigan law requires, among other things:  (1) a licensed professional engineer prepare plans and specifications in most instances;[128] (2) approval by Michigan DEQ prior to making modifications to the dam;[129] (3) minimum spillway capacities;[130] (4) periodic inspections;[131] and (5) the ability to commence a civil action for appropriate relief, including injunctive relief, for violations.[132]  Therefore, although Michigan DEQ's dam safety regulations, including the minimum spillway capacity requirement, do not mirror those required by the Commission, we conclude that revocation of the license does not have the potential to harm public safety.

56.      Boyce Hydro states that if the license is revoked, the Commission will have no continuing authority over project property, including lands and waters, and therefore, will be unable to ensure that recreation opportunities continue to be provided.[133] Although Boyce Hydro is correct in asserting that the Commission would no longer have jurisdiction over the project to impose certain recreation requirements, the public interest would not be served by allowing Boyce Hydro's continued noncompliance with important dam safety requirements that have the potential to affect public safety to extend

---

[127] *See* Mich. Comp. Laws §§ 324.31506 – 31509.

[128] Mich. Comp. Laws § 324.31508.

[129] Mich. Comp. Laws §§ 324.31509 and 31515.

[130] Mich. Comp. Laws § 324.31516(d) ("High hazard potential dams, 40 feet or greater in height, as measured from the 200-year design flood elevation to the lowest downstream toe elevation, shall be capable of passing the half probable maximum flood. The half probable maximum flood criterion may be reduced to not less than the 200-year flood, with proper documentation evidencing a failure of a dam under half probable maximum flood conditions will not cause additional flood damage or loss of life.").

[131] Mich. Comp. Laws § 324.31518.

[132] Mich. Comp. Laws § 324.31525.

[133] Boyce Hydro asserts that with no income from the project, it will have to close all existing recreation facilities and access points in order to prevent damage to the property and minimize potential litigation risk from trespassing recreationists or others. Boyce Hydro's Motion to Withdraw at 14.

Project No. 10808-058                                                                                                   - 27 -

into perpetuity.[134]  With respect to the concerns expressed by the Lake Associations about reservoir levels, the Lake Associations are currently exploring options with the State of Michigan for setting lake levels for recreation purposes.  Revoking the license will not interfere with this activity.[135]

57.    Last, we note that Boyce Hydro's noncompliance was not limited to its inability to address issues related to the project's spillway capacity and recreation facilities.  As detailed above, the licensee also directly violated numerous license requirements.  Standard Article 4 of the license requires Boyce Hydro to file a Public Safety Plan; however, despite being aware of this requirement for over four years, Boyce Hydro still has not filed an adequate plan.  Additionally, although not an ongoing compliance issue, Boyce Hydro engaged in construction and earth-moving activities that directly violated multiple license articles and Part 12 of the Commission's regulations.  Even for compliance issues that have subsequently been remedied, such as documenting that it had obtained all land rights for the project and complying with the 1999 Water Quality Monitoring Plan, Commission staff was engaged in a multi-year effort that included numerous extensions and missed deadlines.[136]

58.    In sum, Boyce Hydro has, for more than a decade, knowingly and willfully refused to comply with major aspects of its license and the Commission's regulatory regime, with the result that public safety has been put at risk and the public has been denied the benefits, particularly project recreation, to which it is entitled.  The record demonstrates that there is no reason to believe that Boyce Hydro will come into compliance; rather, the licensee has displayed a history of obfuscation and outright disregard of its obligations.  We do not often revoke a license, but the licensee has left us with no other way to vindicate the public interest here.  We are mindful of the concerns of the local community, which has suffered the results of Boyce Hydro's malfeasance.  We conclude, however, that revoking the license will leave the community and state agencies increased authority to deal with Boyce Hydro's noncompliance with important

---

[134] We also note that Boyce Hydro has not even met its requirements from the approved Recreation Plan.

[135] As noted above, nothing in this order prevents the Lake Associations from attempting to acquire the project or certain project facilities (e.g. the dam), continuing their efforts to establish lake levels through the State of Michigan, or seeking a Commission license for the project in the future.

[136] For example, on April 23, 2013, Commission staff required Boyce Hydro to connect its water quality monitoring equipment to the project's SCADA system, but Boyce Hydro did not file documentation demonstrating that this was done until after Commission staff issued the 2017 Compliance Order, over four years later.

Project No. 10808-058                                                      - 28 -

dam safety requirements that have the potential to affect public safety and perhaps come to an acceptable arrangement as to how the lakes will be operated in the absence of hydropower generation.

59.     For the above reasons, we find that, under section 31(b), Boyce Hydro knowingly violated its license, the 2017 Compliance Order and other Commission orders and regulations, and that it was given a reasonable time to comply before we commenced this revocation proceeding.  Consequently, we revoke Boyce Hydro's license for the Edenville Project.

60.     Within 15 days of the date of this order, the Boyce Hydro must permanently disable all generating equipment in the project's powerhouse and file written notification with the Secretary of the Commission, providing the date and time that generation ceased, the generator meter reading at that time, and a photograph of the reading on the meter.[137]  Following revocation of the license, the Commission's jurisdiction will end, and authority over the site will pass to Michigan DEQ for dam safety regulatory purposes.

The Commission orders:

        (A)     The license for the Edenville Project No. 10808 is revoked, effective 15 days from the issuance date of this order.

        (B)     Within 15 days of the issuance date of this order, Boyce Hydro must permanently disable the project's generating equipment and file written notification with the Secretary of the Commission, providing the date and time that generation ceased, the generator meter reading at that time, and a photograph of the reading on the meter.

        (C)     This order constitutes final agency action.  Any party may file a request for rehearing of this order within 30 days from the date of its issuance, as provided in section 313(a) of the FPA, 16 U.S.C. § 825l (2012), and the Commission's regulations at 18 C.F.R. § 385.713 (2017).  The filing of a request for rehearing does not operate as a

_____

[137] Revocation of the Edenville Project license does not mandate removal or any modification of the dam.  While, the Commission has broad authority to fashion appropriate remedies to further the goals of the FPA in a manner that is "necessary and appropriate to carry out" the revocation of this license, "as a general rule, we do not condition the effectiveness of a license revocation by imposing additional requirements on a licensee that has shown its unwillingness to comply with other Commission orders." *Eastern Hydroelectric Corp.*, 149 FERC ¶ 61,036 at P 33 (declining request to order removal of all project facilities including the dam and instead only requiring licensee to disable all of the project's generating equipment to prevent operation of the project).

Project No. 10808-058                                                        - 29 -

stay of the effective date of this order, or of any other date specified in this order.  The licensee's failure to file a request for rehearing shall constitute acceptance of this order.

By the Commission.

( S E A L )


                                          Kimberly D. Bose,
                                              Secretary.