# EXHIBIT 20

## MUTUAL NONDISCLOSURE AGREEMENT

**THIS AGREEMENT** ("Agreement") is entered into as of ▆▆▆▆▆▆▆▆ ("**Effective Date**") by and among State of Michigan, including its Department of Environment, Great Lakes and Energy, and the Department of Natural Resources by and through the Office of the Michigan Attorney General ("SOM"); Boyce Hydro, LLC and its affiliated entities and individuals ("Boyce"); and the Four Lakes Task Force ("FLTF"). In this Agreement, the SOM, Boyce, and FLTF may be referred to as "Party" or collectively, as "Parties".

For purposes of this Agreement, a Party disclosing information shall be referred to as the "Disclosing Party", and a Party receiving information shall be referred to as the "Receiving Party".

### Recitals:

**WHEREAS,** the Parties desire to review information currently within a Disclosing Party's possession for the purpose exploring settlement of certain claims alleged by SOM concerning drawdowns of Wixom Lake, located in Midland and Gladwin counties; and,

**WHEREAS,** the Parties agree to keep any and all written or verbal representations and information confidential and shall not use or disclose such information except as provided in this Agreement; and,

**NOW, THEREFORE,** in consideration of the premises and the mutual promises and agreements set forth herein, the Parties agree as follows:

1. **Definitions.** For purposes of this Agreement:

    (a) The term "*Confidential Information*" shall mean any and all data or information relating or that is provided by the Disclosing Party or any person related to or affiliated with a Disclosing Party and not generally known or available to the public, whether in tangible or intangible form, whenever and however Confidential, which may include but is not limited to: (1) the Purchase Agreement dated December 31, 2019 between Boyce, FLTF and Four Lakes Operating Company, (2) statements of any Party made during negotiations, or offers to compromise; and, (3) any other information or documentation deemed Confidential by a Disclosing Party, and provided by the Disclosing Party to the Receiving Party prior to or after the execution of this Agreement.

    (b) The term "*person*" shall be interpreted broadly to include, without limitation, any corporation, company, governmental organization or department, partnership, other entity, group or individual.

    (c) The term "*Representatives*" shall mean as to either Party, such Party and its directors, officers, employees, agents, affiliates, advisors, consultants, attorneys and subcontractors.

2. **Disclosure of Confidential Information and Confidential Information.** From time to time, the Disclosing Party may disclose Confidential Information to the Receiving Party. The Receiving Party will:

(a) limit disclosure of any Confidential Information to its Representatives who have a need to know such Confidential Information in connection with the settlement discussions relating to the drawdowns of Wixom Lake, and only for that purpose;

(b) advise its Representatives of the nature of the Confidential Information and of the obligations set forth in this Agreement and require such Representatives to keep the Confidential Information confidential to the extent allowed by law;

(c) shall keep all Confidential Information strictly confidential by using a reasonable degree of care, but not less than the degree of care used by it in safeguarding its own confidential information; and,

(d) not disclose any Confidential Information received by it to any third parties to the extent allowed by law (except as otherwise provided for herein).

Each Party shall be responsible for any breach of this Agreement by any of their respective Representatives.

3. **Use of Confidential Information.** The Receiving Party agrees to use the Confidential Information solely in connection with settlement discussion as set forth in this Agreement and not for any purpose other than as authorized by this Agreement without the prior written consent of an authorized representative of the Disclosing Party. No other right or license, whether expressed or implied, in the Confidential Information is granted to the Receiving Party hereunder.

4. **Exceptions.** Notwithstanding anything in the foregoing to the contrary, Confidential Information shall not include information which is required to be disclosed in a judicial or administrative proceeding, or is otherwise requested or required to be disclosed by law or regulation, although the requirements of paragraph 5 hereof shall apply prior to any disclosure being made.

5. **Compelled Disclosure of Confidential Information.** Notwithstanding anything in the foregoing to the contrary, the Receiving Party may disclose Confidential Information pursuant to any judicial order, subpoena, discovery request, public records request, or similar method. The Receiving Party agrees to promptly notify, to the extent practicable, the Disclosing Party in writing of such demand for disclosure before disclosing the Confidential Information so that the Disclosing Party, at its sole expense, may seek to make such disclosure subject to a protective order or other appropriate remedy to preserve the confidentiality of the Confidential Information.. The Receiving Party agrees to remain neutral, to the extent practicable, to any such request for a protective order or other relief made by the Disclosing Party.

6. **Term.** This Agreement shall remain in effect indefinitely.

7. **Remedies.** The damages to Disclosing Party that would result from the unauthorized dissemination of the Confidential Information could be significant and substantial, but difficult to calculate. Therefore, the Parties hereby agree that the Disclosing Party shall be entitled to seek injunctive relief preventing the dissemination of any Confidential Information in violation of the terms hereof. Such injunctive relief may be in addition to any other remedies available hereunder as a result of the loss or diminution in value of the same, whether at law or in equity. Disclosing Party may be entitled to recover its costs and fees, including reasonable attorneys' fees, incurred in obtaining any such relief.

8. **Return of Confidential Information.** Receiving Party shall immediately return and redeliver to the Disclosing Party all Confidential Information provided hereunder, and—to the extent allowed by law—delete and/or destroy all tangible material embodying the Confidential Material, such as notes, summaries, memoranda or other such materials, including "copies" that have been converted to computerized media in the form of image, data or word processing files either manually or by image capture in whatever form of storage or retrieval, upon the earlier of (i) the completion or termination of the dealings between the Parties contemplated hereunder; (ii) the termination of this agreement; or (iii) at such time as the Disclosing Party may also request. Alternatively, the Receiving Party, with the written consent of the Disclosing Party, may immediately destroy any of the foregoing embodying Confidential Information (or the reasonably non-recoverable data erasure of computerized data) and, upon request, certify in writing such destruction by an authorized officer of the Receiving Party supervising the destruction.

9. **Notice of Breach.** Receiving Party shall notify the Disclosing Party immediately upon discovery of any unauthorized use or disclosure of Confidential Information by Receiving Party or its Representatives, or any other breach of this Agreement by Receiving Party or its Representatives and will cooperate with efforts by the Disclosing Party to help the Disclosing Party regain possession of Confidential Information and prevent its further unauthorized use or dissemination.

10 **Miscellaneous.**

(a) This Agreement constitutes the entire understanding between the Parties and supersedes any and all prior or contemporaneous understandings and agreements, whether oral or written, between the Parties, with respect to the subject matter hereof. This Agreement can only be modified by a written amendment signed by the Party against whom enforcement of such modification is sought.

(b) The validity, construction and performance of this Agreement shall be governed and construed in accordance with the laws of Michigan applicable to contracts made and to be wholly performed within such state, without giving effect to any conflict of law's provisions thereof.

(c) Any failure by either Party to enforce the other Party's strict performance of any provision of this Agreement will not constitute a waiver of its right to subsequently enforce such provision or any other provision of this Agreement.

(d)  Although the restrictions contained in this Agreement are considered by the Parties to be reasonable for the purpose of protecting the Confidential Information, if any such restriction is found by a court of competent jurisdiction to be unenforceable, such provision will be modified, rewritten or interpreted to include as much of its nature and scope as will render it enforceable. If it cannot be modified, rewritten or interpreted to be enforceable in any respect, it will not be given effect, and the remainder of the Agreement will be enforced as if such provision was not included.

(e)  Any notices or communications required or permitted to be given hereunder may be delivered by hand, deposited with a nationally recognized overnight carrier, electronic-mail, or mailed by certified mail, return receipt requested, postage prepaid, in each case, to the address of the other Party first indicated above (or such other address as may be furnished by a Party in accordance with this paragraph). All such notices or communications shall be deemed to have been given and received (a) in the case of personal delivery or electronic-mail., on the date of such delivery, (b) in the case of delivery by a nationally recognized overnight carrier, on the third business day following dispatch, and (c) in the case of mailing, on the seventh business day following such mailing.

(f)  This Agreement is personal in nature, and no Party may directly or indirectly assign or transfer it by operation of law or otherwise without the prior written consent of the other Parties, which consent will not be unreasonably withheld. All obligations contained in this Agreement shall extend to and be binding upon the Parties to this Agreement and their respective successors, assigns and designees.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date of last signature written below.

**State of Michigan**

By: *[signature]*
Name: Nathan Gambill
Its: Attorney
Date: 2/24/2020

**Four Lakes Task Force**

By: *[signature]*
Name: David E. Kepler, II
Its: President
Date: 2/13/2022

**Boyce (and affiliated entities)**

By: *[signature]*
Name: Lee W. Mueller
Its: Authorized Representative
Date: 13 FEBRURY, 2020