# EXHIBIT 21B

STATE OF MICHIGAN
CIRCUIT COURT FOR THE 30TH JUDICIAL CIRCUIT
INGHAM COUNTY

ATTORNEY GENERAL EX. REL THE
PEOPLE OF THE STATE OF MICHIGAN;
THE DEPARTMENT OF ENVIRONMENT,
GREAT LAKES, AND ENERGY; AND THE
DEPARTMENT OF NATURAL RESOURCES,

No. 20- 25? -CE

HON. WANDA M. STOKES

    Plaintiffs,

v

LEE MUELLER; BOYCE MICHIGAN, LLC;
EDENVILLE HYDRO PROPERTY, LLC;
BOYCE HYDRO POWER LLC; BOYCE
HYDRO, LLC; WD BOYCE TRUST 2350; WD
BOYCE TRUST 8649; WD BOYCE TRUST
3650; STEPHEN B. HULTBERG; AND
MICHELE G. MUELLER,

    Defendants.

Nathan A. Gambill (P75506)
Assistant Attorney General
Michigan Department of Attorney General
Attorney for Plaintiffs
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
GambillN@michigan.gov

There is no other pending or resolved civil action arising
out of the transaction or occurrence alleged
in the complaint.

## COMPLAINT

The above-named Plaintiffs, by their attorneys, Dana Nessel, Attorney General of the State of Michigan, and Nathan A. Gambill, Assistant Attorney General, state as follows:

## INTRODUCTION

1. This lawsuit seeks to vindicate the rights of the public to enjoy and benefit from Michigan's natural resources, including the freshwater mussels that live in the Wixom Lake ecosystem in Gladwin and Midland Counties. Without authorization, Defendants dramatically lowered the level of Wixom Lake for an extended period in both 2018 and 2019 (Drawdowns), causing the death of thousands if not millions of freshwater mussels—many of which are federally endangered. The Drawdowns also unreasonably dewatered wetlands that depend on Wixom Lake and otherwise damaged Michigan's natural resources. This suit seeks monetary relief and civil fines to compensate the public for the damage caused to the public's natural resources, and equitable and prospective relief to restore the natural resource damage and to ensure that it does not happen again.

## PARTIES, VENUE, AND JURISDICTION

2. Michigan's Attorney General is the people's attorney and also files suit on behalf of the State's agencies. See MCL 14.28; MCL 14.29. The Attorney General is authorized to file suit to enjoin the violation of statutes and otherwise seek to end public nuisances and protect the State's natural resources. See *Attorney*

*Gen ex rel Michigan Bd of Optometry v Peterson*, 381 Mich 445, 466 (1969); MCL 324.1701 et seq.

3. The Michigan Department of Environment, Great Lakes, and Energy (EGLE) is the agency tasked with enforcing Part 301 and Part 303 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30101 et seq. and MCL 324.30301 et seq.

4. The Michigan Department of Natural Resources (DNR) is the agency that manages the fish and wildlife in Michigan, which by law belong to the public. MCL 324.40105; MCL 324.48702(1).

5. Edenville Hydro Property, LLC owns the dam where the Drawdowns took place.

6. Boyce Michigan, LLC owns property on which the dam's operation depends.

7. Boyce Hydro, LLC operates the dam where the Drawdowns took place.

8. Boyce Hydro Power, LLC operates and funds the dam where the Drawdowns took place.

9. WD Boyce Trust 2350, is a member of Edenville Hydro Property, LLC; a member of Boyce Michigan, LLC; a member of Boyce Hydro, LLC; and a member of Boyce Hydro Power, LLC.

10. WD Boyce Trust 3649, is a member of Edenville Hydro Property, LLC; a member of Boyce Michigan, LLC; a member of Boyce Hydro, LLC; and a member of Boyce Hydro Power, LLC.

11. WD Boyce Trust 3650, is a member of Edenville Hydro Property, LLC; a member of Boyce Michigan, LLC; a member of Boyce Hydro, LLC; and a member of Boyce Hydro Power, LLC.

12. Lee W. Mueller is sued personally and as member and co-manager of Edenville Hydro Property, LLC; as member and co-manager of Boyce Michigan, LLC; as member, employee, and co-manager of Boyce Hydro, LLC; as member and co-manager of Boyce Hydro Power, LLC; as co-trustee and beneficiary of WD Boyce Trust 2850; as co-trustee and beneficiary of WD Boyce 3649; and as co-trustee and beneficiary of WD Boyce Trust 3650.

13. Stephen B. Hultberg is sued personally and as member and co-manager of Edenville Hydro Property, LLC; as member and co-manager of Boyce Michigan, LLC; as member, employee, and co-manager of Boyce Hydro, LLC; as member and co-manager of Boyce Hydro Power, LLC; as co-trustee and beneficiary of WD Boyce Trust 2850; as co-trustee and beneficiary of WD Boyce 3649; and as co-trustee and beneficiary of WD Boyce Trust 3650.

14. Michele G. Mueller is sued personally and as member of Edenville Hydro Property, LLC; as member of Boyce Michigan, LLC; as member and employee of Boyce Hydro, LLC; and as member of Boyce Hydro Power, LLC.

15. Venue is appropriate in this Court, and this Court has jurisdiction, because this action is "brought by the attorney general in the name of the state or of the people of the state, for the use and benefit thereof," so it is "as though the cause of action arose in" Ingham County. MCL 14.102; see also MCL 600.1631.

Additionally, the violation of a statute passed to benefit the public welfare is a public nuisance, and circuit courts have jurisdiction over actions to abate public nuisances. MCL 600.2940(1).

## GENERAL ALLEGATIONS

16. Michigan's Constitution declares the "conservation and development of the natural resources of the state" to be "of paramount public concern in the interest of the health, safety and general welfare of the people." 1963 Const, art 4, § 52. Accordingly, it orders the Legislature to "provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction." *Id.*

17. To carry out its mandate, the Legislature created the Natural Resources and Environmental Protection Act, MCL 324.101 et seq. Defendants' actions implicate several provisions of that Act, including Part 17 (Environmental Protection Act), Part 301 (Inland Lakes and Streams), Part 303 (Wetlands Protection), Part 355 (Biological Diversity Conservation), Part 365 (Endangered Species Protection), Part 457 (Mussels), and Part 487 (Sport Fishing).

18. Wixom Lake is an artificial impoundment formed by the Edenville Dam at the confluence of the Tobacco and Tittabawassee Rivers. It is an "inland lake or stream" regulated under Part 301, MCL 324.30101(i). It supports contiguous wetlands regulated under Part 303.

19. Wixom Lake, its associated wetlands, and the variety of species they support, including freshwater mussels, is an "ecosystem" under Part 355. MCL

5

324.35501(d). The Wixom Lake ecosystem contributes to Michigan's "biological diversity," which consists of "the full range of variety and variability within and among living organisms and the natural associations in which they occur." MCL 324.35501(a).

20. The Legislature has determined that Michigan's "biological diversity is an important natural resource." MCL 324.35502(a). It is "valuable as a source of intellectual and scientific knowledge, recreation, and aesthetic pleasure." MCL 324.35502(d).

21. Wixom Lake is home to a diverse freshwater mussel community that includes at least the following 15 species: creeper, ellipse, elktoe, fatmucket, fluted-shell, giant floater, kidney-shell, paper pondshell, plain pocketbook, rainbow, round pigtoe, snuffbox, spike, Wabash pigtoe, and white heelsplitter. Four of the species (fluted-shell, paper pondshell, rainbow, and round pigtoe) are designated by the DNR as being of special concern, which means that their numbers are declining, or they are a species that has survived from a primitive era. Importantly, the snuffbox is on both the state and federally endangered species list, and thus further protected by Michigan law. MCL 324.36505.

22. Michigan's freshwater mussels belong to the public. MCL 324.48702(1).

23. Freshwater mussels provide multiple ecosystem services, such as the following: they are a direct food source for other animals, including lake sturgeon, muskrats, racoons, and otters; they provide habitat for aquatic macroinvertebrates

6

that are in turn food for numerous species of fish; they eat by filtering water, which filtering action increases water clarity and stores away the nutrients that would otherwise cause eutrophication and algal blooms; their shells keep a record of pollution events by sequestering atmospheric carbon and incorporating heavy metals; and because they are sensitive to changes in physical habitat and water quality, they serve a "canary in the coalmine" function for indicating the health of an ecosystem.

24. The loss of freshwater mussels means the loss of the valuable services they provide both to an ecosystem and to humans.

25. Freshwater mussels are the most imperiled of any major group of animals, and Michigan populations are overall in decline.

26. Damaging Michigan's biodiversity may have "potentially serious consequences" by eliminating "the raw materials available for scientific and technical advancement," including materials crucial for "agricultural, medicinal, and industrial development." MCL 324.35502(f), (h).

27. Damaging Michigan's biodiversity "may also potentially impact ecosystems and critical ecosystem processes that moderate climate, govern nutrient cycles and soil conservation and production, control pests and diseases, and degrade wastes and pollutants." MCL 324.35502(g).

28. According to the State's records, there are regulated wetlands on and contiguous to Wixom Lake, such as the northern portions of both the Tobacco side and Tittabawassee side impoundments, the marsh east of Heron Cove, and others.

29. The Legislature has determined that wetlands serve many crucial services, including flood and storm control, wildlife habitat, pollution treatment, recharging groundwater supplies, erosion control, and sanctuaries for fish. MCL 324.30302.

30. The Edenville Dam is owned, controlled, or operated by Defendants.

31. From late-September 2018 to the spring of 2019, Defendants opened the gates of the Edenville Dam and lowered Wixom Lake by approximately eight feet.

32. In the spring of 2019, Defendants refilled Wixom Lake.

33. In December 2019, Defendants again opened the gates of the Edenville Dam and again lowered Wixom Lake by approximately eight feet.

34. The Drawdowns were rapid and significant.

35. Neither Drawdown was authorized by EGLE or the DNR.

36. In fact, Defendants applied for a permit to perform the December 2019 Drawdown, and the application was denied. Defendants performed the Drawdown anyway.

37. Once the State learned of the December 2019 Drawdown, it sent notice to Defendants of the violation to give them an opportunity to mitigate the natural resource damages Defendants were causing. Defendants did not mitigate the damages and continued the December 2019 Drawdown.

38. To put the significance of the eight-foot drawdowns into perspective, both the Federal Energy Regulatory Commission—the entity that regulated the

8

level of Wixom Lake before the current lake level order was in place—and the current lake level order, only allow the winter level of Wixom Lake to decrease by approximately three feet.

39. The Drawdowns rapidly exposed large portions of Wixom Lake bottomland and left them exposed for a prolonged period.

40. Freshwater mussels breathe through gills, just as fish, which is why they can only survive on the inundated bottomland of rivers, lakes, streams, and ponds. But unlike fish, freshwater mussels move slowly and unpredictably—they will not necessarily move towards deeper water quickly enough to survive. Even if they burrow deeper into the earth once bottomland is exposed, the burrowing will not protect them from harm during long periods of dewatering or freezing temperatures—such as the extended period of the Drawdown.

41. The DNR performed mussel surveys during the Drawdowns on exposed bottomland below the three-foot contour line of Wixom Lake, and found that the Drawdowns caused the death of thousands, if not millions, of freshwater mussels.

42. Those surveys also showed that snuffbox mussels, a state and federally endangered species, live on Wixom Lake, and the Drawdowns caused the death of snuffbox mussels. Defendants' taking of state and federally endangered mussels violates Michigan law. MCL 324.36505.

43. The fact that Defendants significantly drew down the lake in 2018, refilled it in the spring of 2019, and then significantly drew it down again in 2019 was especially destructive to the freshwater mussel community on Wixom Lake.

9

The refill lured mussels that had survived the 2018 Drawdown back to watered areas, only to have those areas dewatered again in 2019.

44. The Drawdowns also increased the risk of significant erosion to the exposed edges of the lakebed.

45. Had Defendants followed the standard permitting process to perform the Drawdowns, they would have been required to demonstrate—among other things—that there were no feasible and prudent alternatives to such dramatic Drawdowns and also been required to mitigate the natural resource impacts of the Drawdowns as much as possible.

46. Had Defendants obtained permits from EGLE, they would have been required to take actions to meaningfully mitigate the harm a Drawdown would cause to the freshwater mussel ecosystem at Wixom Lake, such as: limiting the Drawdown rate and timing to minimize the impact on freshwater mussels and other animals; coordinating with the DNR to obtain a permit authorizing the proper handling of mussels; daily monitoring of stranded fish, mussels, and other organisms with an ongoing obligation to safely relocate as many stranded organisms as possible.

47. Because Defendants bypassed or ignored the permitting process, they also bypassed the mitigating measures that would have lightened the burden the Drawdowns—if such significant Drawdowns truly were necessary—would have had on the State's natural resources, including wetlands and the freshwater mussel population.

48. Although Defendants apparently made some effort in the initial stages of the December 2019 Drawdown to mitigate harm to mussels, they have declined to provide the documentation necessary to substantiate their efforts, if any.

49. Defendants are now responsible to the public for the damage they caused the State's natural resources, along with civil fines.

## COUNT I: PART 17 (ENVIRONMENTAL PROTECTION ACT)

50. All previous allegations are incorporated here.

51. The Drawdowns for which Defendants are responsible have impaired or destroyed freshwater mussel ecosystems. This natural resource damage is not hypothetical. As alleged above, the DNR has performed mussel surveys on the bottomland exposed by the Drawdowns and confirmed the significant harm Defendants caused freshwater mussels, including state and federally endangered mussels.

52. The Drawdowns have unlawfully impaired the regulated wetlands that depend on Wixom Lake, and continue to do so.

53. The Drawdowns have and continue to harm the Wixom Lake ecosystem and the natural resources on which it depends, including by increasing the risk of significant erosion to the exposed edges of the lakebed.

54. The State seeks an order under MCL 324.1704(1) that requires Defendants to repair the damage the Drawdowns have caused the State's natural resources, cease any further destruction of the State's natural resources, and that forbids any future Drawdown without first obtaining the necessary permits.

## COUNT II: PART 301 (INLAND LAKES AND STREAMS)

55. All previous allegations are incorporated here.

56. Wixom Lake is an "inland lake or stream" under MCL 324.30101(i).

57. The Drawdowns "diminish[ed] an inland lake or stream" under MCL 324.30102(1)(d). They significantly diminished the lake level, exposed large areas of the bottomland for a prolonged period and caused the death of thousands—if not millions—of freshwater mussels, including federally endangered mussels.

58. The Drawdowns were not authorized by a permit, so they were forbidden by MCL 324.30102(1)(d).

59. Defendants violated Part 301 by authorizing, directing, or carrying out the Drawdowns.

60. Because the Drawdowns caused the death of so many freshwater mussels and caused other natural resource damage, simply lowering the gates of the Edenville Dam and allowing Wixom Lake to refill, which happened in the spring of 2019 and presumably Defendants will seek to have happen again in the spring of 2020, does not restore "the affected area to its prior condition." MCL 324.30112(1).

61. The State seeks an order under MCL 324.30112 requiring Defendants to restore the Wixom Lake ecosystem to its prior condition, including restoration of the freshwater mussels, along with the assessment of civil fines.

## COUNT III: PART 303 (WETLANDS PROTECTION)

62. All previous allegations are incorporated here.

63. Areas on and contiguous to Wixom Lake, including the northern portions of both the Tobacco side and Tittabawassee side impoundments, the marsh east of Heron Cove, and others, are "wetlands" as defined by MCL 324.30301(n) according to the State's records.

64. The Drawdowns drained surface water from the wetlands without a permit, in violation of MCL 324.30304(d).

65. The drainage went beyond minor drainage and does not qualify for any exemption listed in Part 303, including those in MCL 324.30305.

66. By drawing significantly more water from the wetlands than an ordinary winter Drawdown would, the Drawdowns drained the wetlands in violation of Part 303.

67. Defendants violated Part 303 by authorizing, directing, or carrying out the Drawdowns.

68. The State seeks an order under MCL 324.30316 requiring Defendants to restore the affected wetlands as nearly as possible to their state prior to the Drawdowns, along with the assessment of civil fines.

## COUNT IV: CONVERSION

69. All previous allegations are incorporated here.

70. The State owns the freshwater mussels killed by the Drawdowns. MCL 324.48702(1).

71. Defendants had a duty not to interfere with the State's property, let alone destroy it.

13

72. Defendants knew that by authorizing or carrying out the Drawdowns, they would expose large portions of the bottomland of Wixom Lake for prolonged periods.

73. By authorizing, directing, or carrying out the Drawdown, Defendants wrongfully exerted dominion over the freshwater mussels and caused their death, which denies and is inconsistent with the State's rights to them.

74. Defendants' actions constitute a taking, and it was contrary to law for Defendants to take the State's mussels without authorization. MCL 324.48702(1); MCL 324.45703.

75. The State seeks damages for Defendants' conversion of the State's mussels.

## COUNT V. PUBLIC NUISANCE

76. All previous allegations are incorporated here.

77. Defendants' actions have created a public nuisance because the general public has a common right to enjoy and benefit from the natural resources that are part of the Wixom Lake ecosystem.

78. Defendants' actions have unreasonably interfered with that common right because the Drawdowns have harmed those natural resources and caused long-lasting negative impacts on the Wixom Lake ecosystem.

79. Defendants' actions have also unreasonably interfered with that common right because they are proscribed by law. As alleged above, Defendants

14

actions have violated Parts 17, 301, 303, 365, 457 and 487 of the NREPA. Each of those parts are laws passed to preserve the public welfare.

80. Not only have Defendants created the public nuisance by their actions, but the nuisance emanates from land they own or control.

81. The State seeks an order abating the public nuisance, restoring as much as possible the Wixom Lake ecosystem to its state prior to the Drawdowns, and forbidding Defendants from further harming the Wixom Lake ecosystem without permits.

## RELIEF REQUESTED

As explained above, the State seeks the following:

a. A money judgment exceeding $25,000;

b. A declaration that Defendants violated Parts 17, 301, 303, 365, 457, and 487 of the NREPA;

b. Civil fines;

c. An order reimbursing the State's enforcement expenses, including litigation expenses and attorney's fees;

d. A declaration that Defendants' violations of the common law and NREPA have created an ongoing public nuisance;

  c. An order requiring the abatement of the public nuisance; requiring the restoration of the Wixom Lake ecosystem, including the destroyed freshwater mussels; requiring any necessary wetland restoration; forbidding any future unauthorized Drawdown of Wixom Lake; and forbidding any future violation of the common law or the NREPA;

  d. Any other relief the Court considers appropriate.

Respectfully submitted,

Dana Nessel
Attorney General

*/s/ Nathan A. Gambill*
Nathan A. Gambill (P75506)
Assistant Attorneys General
Environment, Natural Resources, and
Agriculture Division
Attorney for Plaintiff
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
GambillN@michigan.gov

Dated: April 30, 2020