# EXHIBIT 23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY, and THE MICHIGAN DEPARTMENT OF NATURAL RESOURCES,<br>      Plaintiffs,<br><br>-v-<br><br>LEE MUELLER, et al.,<br>      Defendants. | No. 1:20-cv-528<br><br>Honorable Paul L. Maloney |

## TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiffs' motion for a temporary restraining order (ECF No. 1-1 at PageID.54). Plaintiffs seek to require Defendants to employ an engineer to perform an emergency inspection on the remaining portions of the Edenville Dam following its collapse on May 19, 2020.

Defendants own and operate the Edenville Dam that forms an impoundment called Wixom Lake, located at the confluence of the Tittabawassee River and the Tobacco River. The Edenville Dam is in Midland and Gladwin Counties, Michigan. On May 19, 2020, the Edenville Dam failed, causing one of the worst flooding events in the state's history. The dam was severely damaged and partially destroyed; what remains continues to hold back a substantial amount of water. Plaintiffs allege that the partial dam is causing ongoing damage by diverting the flow of the nearby Tobacco River and preventing the repair and reopening of highway M-30.

On May 22, 2020, Plaintiff Michigan Department of Environment, Great Lakes, and Energy ("EGLE") issued an emergency inspection order requiring Defendants to have an engineer evaluate the dam and report findings by May 24. Defendants did not respond. On June 2, EGLE staff contacted Defendant Lee Mueller by email and provided a new "due date" of June 3. In response, Mueller replied that his engineer would begin the inspection sometime during the week of June 8. EGLE has since learned that the engineer was scheduled to be on site on June 10, but it is not clear whether the inspection occurred, and if so, whether the findings were reported to EGLE. Plaintiffs now seek an order requiring Defendants to have the inspection performed immediately.

The decision to grant or deny a temporary restraining order falls within the discretion of a district court. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) ("The district court's decision to grant a temporary restraining order, when appealable, is reviewed by this court for abuse of discretion."). The court must consider each of four factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the order; (3) whether the order would cause substantial harm to others; and (4) whether the public interest would be served by the order. *Ohio Republican Party*, 543 F.3d at 361 (quoting *Northeast Ohio Coalition for Homeless and Service Employees Intern. Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). The four factors are not prerequisites that must be met, but are interrelated concerns that must be balanced together. *See Northeast Ohio Coalition*, 467 F.3d at 1009. For the first two factors, the probability of success on the merits that a plaintiff

must show is inversely proportional to the degree of irreparable harm that the plaintiff would suffer if a temporary restraining order is not issued. *Id.*

The Court finds that Plaintiffs have met their burden.

First, they have demonstrated a strong likelihood of success on the merits of at least some of the claims presented. At a minimum, it appears that EGLE will succeed on its claim that Defendants must inspect or allow inspection of the remaining portions of the dam. The Edenville Dam is regulated by the State of Michigan, not the Federal Energy Regulatory Commission. Michigan law permits EGLE to "order additional inspection reports following an event or change in condition that could threaten a dam." M.C.L. § 324.31518(2). The May 19 flood was certainly an event that could threaten a dam. Thus, EGLE appears likely to succeed on its claim that Defendants must comply with the emergency inspection order.

Second, Plaintiffs have alleged irreparable harm if the temporary restraining order is not issued. The Edenville Dam collapse has already caused extensive damage to the downstream areas. Plaintiffs allege that there are cracks in the Edenville dam that are 60 feet long, and that citizens have been venturing into the destroyed area to recover property lost in the flood. If another storm were to come through the area, the damaged dam presents a grave risk to property and public health. Defendants have slow-walked their response, without regard to the possibility that now-damaged dam could cause another mass flooding event. As is, the dam presents a great risk of irreparable harm.

Finally, the equities weigh in favor of granting Plaintiffs the immediate relief they seek. Plaintiffs' interests overlap with the public safety interest in having the remains of the Edenville dam inspected immediately. The Court cannot discern any harm that will come to

Defendants, particularly since they have already hired an engineer and the inspection may have occurred last week. The public interest in being free from additional flooding far outweighs any harm that may come to Defendants from performing an inspection.

Having found that the factors weigh in favor of granting Plaintiffs' motion for a temporary restraining order, it is hereby **ORDERED** that Defendants must:

1. Employ an engineer to perform the inspection ordered by EGLE in the May 22, 2020 Edenville Dam Emergency Inspection Order and do the following:

   a. Have the engineer immediately determine whether the risk posed by the Tobacco River side of the Edenville dam is substantial enough that immediate action should be taken to mitigate the risk to public safety, natural resources, and public transportation (specifically M-30) and what that action should be; and

   b. Prepare a comprehensive report that (a) evaluates the safety and stability of the remaining portions of the Edenville Dam; (b) identifies any deficiencies that may pose a risk to the remaining dam structure, natural resources, and/or public transportation; (c) recommends necessary measures to mitigate any identified deficiencies; and (d) establishes a timeframe to complete all measures necessary to mitigate the deficiencies;

2. Immediately report to the Court and EGLE the engineer's finding in paragraph (A)(1) as soon as the engineer makes the finding but no later than **June 19, 2020**, and submit the report required by paragraph (A)(2) no later than **July 24, 2020**.

**IT IS SO ORDERED.**

Date: June 15, 2020                              /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge